OPINION OF THE COURT
Stanley Gartenstein, J.
One of the unique features of the juvenile justice system is the existence of preadjudication proceedings known as probation intake. It is the function of these proceedings to attempt "adjustment” of incidents before a petition is filed and the matter sent through the court process for adjudication. Where it is apparent that an ultimate adjudication of delinquency *57 will serve no useful purpose and/or that the informal adjustment procedure will accomplish the same result to the satisfaction of all actual or prospective parties, the matter is adjusted and never reaches adjudication. The utility of this procedure may be demonstrated by the fact that some 55% of all matters brought to the court itself never reach the petition stage.
To protect against overreaching by a probation officer, the statute provides on the one hand that he may not prevent any prospective litigant from having access to the court for the purpose of filing a petition (Family Ct Act, § 734); and on the other, that if a petition is filed, no statement made at the adjustment conference shall be admissible (Family Ct Act, § 735).
The import of section 735 is now before us for judicial construction.
THE FACTS
On August 23, 1977, both respondents herein were arrested on charges of second degree robbery (Penal Law, § 160.10), second degree assault (Penal Law, § 120.05) and possession of a dangerous weapon (Penal Law, § 265.05). On September 1, 1977, respondents and their parents were interviewed by probation officers as were the complainant and his brother. As a result of these interviews and information obtained therein, further charges of first degree sodomy (Penal Law, § 130.50) and other lesser charges were filed against respondents by a superseding petition dated Septemer 12, 1977. Inasmuch as one of these charges is a designated felony under section 712 of the Family Court Act respondents now find themselves charged under the Juvenile Justice Reform Act facing restrictive placement and minimum sentence.
Both respondents have moved for dismissal of the new charges on the grounds that the filing thereof was causally connected to disclosures made by the intake probation officers to law enforcement personnel. It is claimed that a violation of the intake privilege is an invasion of respondent’s constitutional rights under the Fifth Amendment sufficient to mandate outright dismissal.
Inasmuch as all motions addressed to designated felony proceedings are returnable by law in the special designated felony part, this motion orginally came before the Honorable William Rigler there presiding. Judge Rigler, in order to
*58 avoid disclosure of intake material to him as the trial court, referred the motion to the undersigned for hearing as to the circumstances surrounding the intake conference on the issue of causality and for a ruling on the law pertaining to the effect if any of the primary taint on the conduct of the trial. At a hearing before the undersigned, the court determined from the testimony of the probation officer that a causal connection did indeed exist between the disclosure by the probation officer and the filing of the petition and reserved decision on the question of how the conduct of the trial would be affected thereby.
APPLICABLE STATUTE
The text of section 735 of the Family Court Act reads: "No statement made during a preliminary conference may be admitted into evidence at a fact-finding hearing”. Supplementing the statute, the text of the Family Court Rules (22 NYCRR Part 2507) contains a similar provision.
THE PRIVILEGE AT PROBATION INTAKE
The threshold issue on the extent of the statutory protection afforded by section 735 resolves itself to a question of whether or not the statute was enacted to fulfill a constitutionally mandated protection of Fourteenth Amendment rights. If we hold in the affirmative, the statutory text must be liberally construed to effectuate a constitutionally protected right inasmuch as any failure of the statute to fully protect same would render it constitutionally vulnerable. If we hold in the negative, obviously the explicit terms of the statute must be given effect and there would be no room for judicial construction unless an ambiguity appears on its face.
Matter of Anthony S. (73 Misc 2d 187) after analysis of the constitutional trend recognizing an expanding panoply of rights on behalf of juveniles, the undersigned held that this trend did not include proceedings taken at the informal intake conference. That decision was based in the main upon a footnote in the landmark case of Matter of Gault (387 US 1) in which the Supreme Court exempted prejudicial stages of juvenile proceedings from its operation and upon criteria enunciated in McKeiver v Pennsylvania (403 US 528, 540) denying a juvenile any procedural rights which if recognized, "would most likely be disruptive of the unique nature of the
*59 juvenile process”. Anthony S. was framed on constitutional grounds and concurred with the holding of my brother in Matter of Frank H. (71 Misc 2d 1042) (per Hon. Ralph E. Cory), on the issue of the right to counsel at the intake conference. The constitutional issues were specifically treated on motion of counsel (the same attorney appeared for respondent in both proceedings) who claimed that Judge Cory’s decision based upon the statutory privilege enacted by section 735 took no note of constitutional mandates. We held then as we now do, that the intake conference is not constitutionally protected and that any rights granted with respect thereto must be forthcoming by statutory enactment or expanding case law of this State.
A reading of section 735 makes it abundantly clear that it is an exclusionary rule of evidence as a matter of adjective law. Thus, it establishes a category of inadmissible statements which we shall accept as analogous to "primary taint”. The rationale for this statute is obvious. A probation officer clothed with the authority of his position ipso facto generates an atmosphere of implied compulsion to make declarations which a juvenile (or other similarly situated defendant) might not ordinarily make. A juvenile appears. He sees the probation officer interviewing the same police officers who had authority under the law to arrest him. The probation officer evaluates the evidence. He has an office in a court building. How can it be said that the juvenile (or any defendant) can differentiate the subtleties of exclusionary rules which govern probation or that he can separate out the probation officer’s function from the confusing array of court people which confronts him the moment he enters the door? The Legislature has recognized the tremendous apparent authority of the probation officer by enacting an absolute exclusionary rule. In the long run, the staggering body of law speaking to exclusion of any evidence in criminal proceedings is nothing more or less than a statement of simple values of fair play, so to speak, to even the odds between the awesome power of the State and an individual alone against it.
We therefore equate as the statute does, the exclusionary rule pertaining to intake conference disclosures, with rules governing other tainted evidence. Accordingly, we interpolate procedures applicable to these categories to the matter before us.
It is urged upon the court that the primary taint of excluda *60 ble evidence is so basic, that it mandates outright dismissal. We disagree.
On the other hand, it is urged that the statutory privilege extends only to the declarations made at the intake conference itself and does not cover evidence discovered as a result thereof. Again we disagree.
It is settled law that outright dismissal of charges is mandated only when there exists such basic prosecutorial misconduct which makes the very pendency of the charges themselves immoral (People v Collier, 85 Misc 2d 529). We do not have such conduct before us. On the other hand, it is sufficiently clear that a court dealing with tainted evidence must extend its exclusion thereof not only to the primary taint, but to all "fruit of the poisoned tree” as well. (See Wong Sun v United States, 371 US 471.) Furthermore, the fact that the same result could have been legally brought about does not vitiate this original violation (United States v Schipani, 289 F Supp 43). In so holding, we have no intention of doing violence to those cases admitting secondary evidence where taint attached to the original evidence. See People v Mendez (28 NY2d 94, cert den 404 US 911) (witness found by use of illegal wiretap) and People v Portelli (15 NY2d 235, cert den 382 US 1009) (testimony of witness properly admitted where information originally obtained from that witness as result of police brutality). There is a proper middle course between these two lines of authority which does not contradict each other. The proper forum to determine admissibility is the trial court especially where no jury is functioning. Respondents shall therefore be entitled either to a separate proceeding analogous to a Wade hearing or to a voir dire within the ambit of the trial itself, concerning the admissibility of any testimony offered. Where a chain of causality shall exist back to the primary taint wherein it shall be impossible to separate the secondary evidence from the primary taint, the exclusionary doctrine of "poisoned fruits” shall apply and the evidence excluded.
Finally, we have considered People v Rhem (52 Misc 2d 853) as cited by respondents and find it inapplicable. In that proceeding probation material was improperly admitted into evidence not as the result of violation of any statutory privilege, but as the result of prosecutional misconduct in violating a specific agreement between the District Attorney’s office and probation. In the case before us, not only does the statute
*61 provide for absolute privilege, but we have also provided herein for the exclusion of secondarily tainted evidence such as is inseparable from the primary taint.
The motion to dismiss is denied. Refer the trial back to designated felony part for proceedings not inconsistent herewith.