OPINION OF THE COURT
Stanley Gartenstein, J.
A motion to dismiss in the interests of justice provides the court with an opportunity to rectify what might otherwise be an intolerable injustice. It also underscores a quirk in the statutory scheme whereby a unique procedure designed specifically for the protection of juveniles before this court has become the vehicle whereby crucial exculpatory information was withheld both from the court and from all interested parties thus resulting in an unwarranted finding of guilt.
THE FACTS
Richard J. was found guilty by the undersigned after a Bench trial on October 26, 1983, on charges of robbery in the third degree (Penal Law, § 160.05), criminal possession of stolen property in the third degree (Penal Law, § 165.40) *840 and grand larceny (Penal Law, § 155.30). The underlying incident upon which this verdict was based involved an alleged mugging on July 12, 1983, in which certain property was forcibly taken from complainant, a woman who had been jogging in Central Park. Complainant, admitting that she had lost sight of her assailant after the act in question, later identified respondent as a coperpetrator from a group of three blacks who were present in the park at the time. When he was identified, respondent was lounging in a park area; did not flee; and in fact denied any participation in the crimes charged. He has maintained his innocence throughout the probation intake procedures; throughout the trial; and on the witness stand as a witness in his own behalf. He has never been arrested before.
The contraband in question was ultimately recovered from the apartment of a young man who was neither arrested nor charged. Although respondent was arrested and charged together with a third young man, the presentment agency elected not to prosecute either the potential corespondent or the young man in whose home the contraband was located.
At the conclusion of the trial, the court stated candidly on record that it had arrived at its verdict only after much soul-searching during which it weighed conflicting versions of the facts presented by the respective parties. Pointing out that the complaining witness and respondent both made credible witnesses, the court found it appropriate to guide itself by fact-finding techniques suggested for lay jurors in the standard jury instructions propounded for Bench use by the Office of Court Administration. The court emphasized that although there were lingering doubts in its mind, it proceeded as lay jurors are instructed to do, by excluding all reasonable inferences consistent with innocence; though still entertaining doubts, these did not rise to the level of “reasonable doubt” as defined by judicial holdings.
Following these events, the court, prior to ordering a predisposition investigation, examined the file maintained by the Department of Probation. This file contains, among other materials, the respondent’s prior background and the substance of all precourt interviews conducted by the pro *841 bation officer. As a matter of law, this information is privileged and may not be disclosed to the court unless and until the petition is sustained, after which, its contents may be shared with respective counsel under appropriate guidelines. At this stage of the proceedings it was discovered for the first time by the court that in an interview with the assigned probation officer, the uncharged corespondent not only completely exonerated the respondent but provided evidence which, if known, might have led to the arrest and prosecution of the third unarrested youth. At this point the court invited a motion for dismissal in the interests of justice (Family Ct Act, § 315.2), which is now before it.
Although a motion to dismiss in the interests of justice was unknown in the Family Court prior to July 1, 1983, the effective date of the newly enacted juvenile procedure act, a substantial body of law exists in the adult criminal justice system which may properly be applied in these proceedings (Family Ct Act, § 303.1, subd 2). In point of fact, this remedy dates back as far as the procedural reforms of 1849 (cf. People v Quill, 11 Misc 2d 512). In People v Clayton (41 AD2d 204), the Appellate Division, Second Department, arguing that the orderly administration of justice would best be accomplished by a codification of those factors appropriately considered by the nisi prius court, set forth a list of criteria upon which this relief should properly be based. In People v Beige (41 NY2d 60), the Court of Appeals approved this approach and called for appropriate legislation to implement it. This legislation was forthcoming with the enactment of chapter 216 of the Laws of 1979, which amended CPL 170.40 and 210.40. This amendment with minor changes codified Clayton (supra), and served as the model for a later, similar statute applicable to the Family Court. In deciding a motion to dismiss in the interests of justice, the Family Court is now mandated to consider:
(a) seriousness and circumstances of crime;
(b) extent of harm caused by it;
(c) serious misconduct of law enforcement personnel in investigation, arrest or presentment;
(d) history and character of respondent;
*842 (e) needs and best interests of respondent;
(f) need for protection of community; and
(g) any other relevant factor. (Family Ct Act, § 315.2, subd 1.)
The statute requires either an individual or collective examination of these criteria by the court.
In terms of the alleged crime itself, if indeed respondent was its perpetrator, forcible robbery of a defenseless female outnumbered 3 to 1 in a recreation area set aside for the enjoyment of this city’s residents does indeed merit outrage and the condemnation of society. But the court is not convinced of respondent’s culpability. We do not believe that it diminishes us individually as a Judge to recognize and admit that there are instances in which the process of arriving at a verdict without the invaluable aid of a jury may involve substantial agonizing for an ethical and well-intentioned jurist. The fact that nagging doubts which do not rise to the level of reasonable doubt sufficient to mandate a verdict of acquittal may exist only serves to underscore the reality that the search for truth is at its best, a groping effort at an educated guess. We are convinced that had there been the slightest inkling that the alleged coperpetrator totally exonerated respondent, a verdict of not guilty would have been rendered based upon reasonable doubt.
On strictly moral grounds, there can be no argument that a court’s postverdict determination that a defendant is innocent forms a sufficient basis to dismiss in the interest of justice under section 315.2 (subd 1, par [g]) of the Family Court Act calling for “any other relevant factor.” We do so hold.
At this juncture, attention properly focuses upon a serious flaw in the statutory scheme brought to light by these proceedings. Much has been written about the unique aspects of the precourt adjustment procedure indigenous to the juvenile justice system (cf. Matter of Anthony S., 73 Misc 2d 187) which provides a format for mediation between prospective litigants prior to actual court involvement (viz., petition drawn, filed and docketed, and appearance before a Judge). In New York, this procedure is so effective that its success rate consistently hovers near or *843 over the 50% mark. Of all cases requiring contact with the juvenile justice machinery, approximately half are successfully diverted from the court to everyone’s satisfaction.
In New York State, the adjustment process falls within the jurisdiction of the Department of Probation. In order to create an atmosphere conducive to the settlement of grievances the statute (cf. Family Ct Act, § 308.1, subd 7) insures a free flow of communication via an absolute privilege attaching to all statements made to a probation officer at the intake conference. It has been held that any disclosure or other breach of this privilege is so serious that the declaration itself together with any “fruit of the poisoned tree” is properly suppressed. (Matter of Luis R., 92 Misc 2d 55.)
In terms of the law as it now stands, the decision of the Department of Probation to withhold this exculpatory material both from the court and from counsel was entirely proper. The fact does remain however, that exculpatory material in the hands of the Department of Probation is Brady material, the withholding of which in this case had the effect of denying respondent his right thereto as guaranteed by Brady v Maryland (373 US 83). That this result has been brought about by the application of a statute designed specifically for respondent’s protection is one of those cruel ironies occasioned by the impossibility of having the Legislature foresee every consequence of a proposed enactment. To underscore how rare this situation is, it is only necessary to realize that it appears never to have been considered by any reported case. Nevertheless, remedial legislation would appear to be appropriate. Accordingly, the attention of the Legislature is respectfully directed to the potential for injustice resulting from the current statutory scheme as illustrated by this case. A simple enactment mandating the Department of Probation to call to the attention of the arraigning Judge in camera, all exculpatory material in its files for such use as the court may properly see fit to put it would ensure against repetition of these circumstances in the future.*
*844 To the extent set forth above, the court has considered and weighed the factors enumerated in section 315.2 of the Family Court Act and has determined that the interests of justice would best be served by dismissal and vacatur of the finding.
The clerk is directed to seal these proceedings, upon the expiration of the statutory time to appeal.

 Subdivision 6 of the newly enacted section 308.1 of the Family Court Act shows legislative recognition that there are instances where a hard and fast rule concerning probation’s separate and independent functioning in this area is neither possible nor advisable. This subdivision as it now stands, does not treat of the situation at bar, possibly because the Legislature did not contemplate it.