OPINION OF THE COURT
William Leibovitz, J.
The New York City Police Department requests that sub *261 poenas duces tecum be quashed in 10 separate cases, having been issued by a Judge of this court ex parte to defendants’ attorneys, the Legal Aid Society. The subpoenaed items are all routine police reports concerning the defendants’ charges, and their arrest photographs.
The Police Department contends that police reports are not legally available to defendants under pretrial discovery rules, or as Rosario material until a hearing or trial, and that subpoenas may not be used to circumvent these laws. Also claimed is a waste of resources in supplying improperly subpoenaed materials.
In response, the Legal Aid Society states that the items subpoenaed are specific, relevant and material, and are not claimed to be privileged. They are essential for trial preparation and contain, among other matters, evidence from witnesses who will not testify at trial and consequently will never be disclosed to the defendants as Rosario material, or otherwise than by subpoena.
Research has not disclosed a reported case in which a New York appellate court has decided under current law whether a defendant in preparation for trial may subpoena specific and routine police reports that are not confidential or privileged.
PRETRIAL COMPULSORY PROCESS
In all criminal prosecutions, the Sixth and Fourteenth Amendments of the US Constitution guarantee the defendant the right to compulsory process of witnesses and documentary evidence that might be favorable to the defendant. (See, e.g., United States v Nixon, 418 US 683 [1974]; Washington v Texas, 388 US 14 [1967].) The Supreme Court views the Compulsory Process Clause within the framework of the Due Process Clause and fundamental fairness of trials. (Pennsylvania v Ritchie, 480 US 39, 56 [1987].)
In the present proceeding, the Police Department argues that compulsory process is a trial right that is not available to defendants before trial, citing People v Chipp (75 NY2d 327 [1990] [defendant lacked absolute right to subpoena complaining witness at Wade hearing]). However, Chipp does not support that conclusion and does not address the issue of pretrial subpoenas for police documents, but instead involves a separate and unrelated policy concern for intimidation of civilian witnesses by subpoenas at pretrial hearings.
It has long been the Federal view that trial courts have *262 discretion to grant compulsory process for documents before trial to facilitate trial preparation. In 1807, the Supreme Court through Chief Justice Marshall ruled that Aaron Burr’s compulsory process right entitled him before trial for treason to subpoena as evidence a letter in the possession of President Jefferson. The court rejected the notion “that the accused shall be disabled from preparing for [trial] until an indictment shall be found against him” and held that "he should have the benefit of the provision which entitles him to compulsory process as soon as he is brought into court” (United States v Burr, 25 Fed Cas 30, 33-34 [CC Va 1807]). The Supreme Court noted the present viability of the Burr case in both United States v Nixon (supra, at 702) and Pennsylvania v Ritchie (supra, at 55).
New York now expressly shares the Federal view, embodied in rule 17 (c) of the Federal Rules of Criminal Procedure, that a Trial Judge has discretion to grant pretrial access of subpoenaed materials to both defendant and prosecutor for trial preparation. In 1979, New York amended CPL 610.25, in conformity with rule 17 (c), to allow the parties pretrial access to evidence by subpoena duces tecum. A Practice Commentary of (now Judge) Joseph W. Bellacosa explains the revision as being “designed to foster early availability of evidence to reduce surprise and gamesmanship.” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 610.25, at 270.)
Accordingly, the Police Department’s position, that as a matter of law physical evidence is not available to defendants by compulsory process before trial, is legally unsupportable. It is therefore necessary to determine whether other legal barriers prevent the defendants’ access to police reports by subpoena.
PRECONDITIONS OF SUBPOENA RIGHT
A defendant’s right to acquire information by subpoena duces tecum (CPL art 610) is subject to threshold conditions. The general rule in New York is that evidence subpoenaed by the defendant must be relevant and material to the determination of guilt or innocence. (People v Gissendanner, 48 NY2d 543, 548 [1979].)
Gissendanner (supra), however, did not address the issue of materiality as it would apply to routine police reports. In Gissendanner, defendant’s counsel requested a subpoena for *263 police officers’ personnel files which were admittedly confidential. Counsel’s only stated purpose was “to 'find material appropriate for cross-examination when the officers testified’ ” (supra, at 547). The court held that while even confidential records may be subject to compulsory process, counsel’s sole objective of impeaching general credibility was not sufficiently relevant and material to outweigh "the State’s interest in safeguarding the confidentiality of police personnel records” (supra, at 548).
Appellate decisions in New York have not considered the issue of materiality in relation to nonconfidential, routine police reports, in which counsel’s purposes for access by subpoena, as in this proceeding, are not limited to general impeachment.
The Federal standard for pretrial access to subpoenaed materials under Federal rule 17 (c) has generally been the test devised in United States v Iozia (13 FRD 335, 338 [SD NY 1952]), requiring the party that seeks production to show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general “fishing expedition.”
Whether applying New York or Federal criteria, the critical element in judicial evaluation of a subpoena duces tecum is its materiality, that is, whether the information subpoenaed would make a favorable difference to the seeking party in the outcome of the trial if disclosed. Such was the concern in People v Gissendanner (supra, at 548-550). The Federal test, previously cited, also centers in actual practice on the materiality of the subpoenaed documents. (See, United States v Valenzuela-Bernal, 458 US 858, 867 [1982]; United States v Nixon, supra, at 700.) Likewise, a subpoena in a State criminal case considered under State laws by the United States Supreme Court was analyzed principally in terms of materiality. (Pennsylvania v Ritchie, supra, at 61.)
In a case having a major impact on the present proceeding, the Supreme Court in Pennsylvania v Ritchie (supra) held that a Pennsylvania trial court violated the Sixth and Fourteenth Amendment due process rights of a defendant by failing to *264 review his subpoenaed records in camera and to release any material information to the defendant before trial. Counsel for the defendant who was charged with sexual abuse of a child had subpoenaed the confidential records of a State child welfare agency, claiming he was entitled to the information "because the file might contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence” (480 US, supra, at 44).
In the present case, the request of defendants’ counsel for access to the subpoenaed police reports is essentially that of counsel in Pennsylvania v Ritchie (supra). Counsel here urges that such reports might contain information regarding favorable witnesses (who if not called to testify at trial would not come within the reach of Rosario disclosure [CPL 240.45]). Counsel here also seeks other unspecified exculpatory material, as in Ritchie.
It is therefore clear under the given facts of this proceeding that unless these subpoenas are otherwise legally invalid, the court should not summarily quash them or neglect to determine the materiality of the police records. To do otherwise invites a due process violation.
The Police Department cites language in Ritchie (supra) stating that a defendant has no constitutional right to make an unsupervised, general search of the State’s files under a general request to discover exculpatory evidence, but must rely on the prosecution to produce Brady material. (See, Weatherford v Bursey, 429 US 545, 559 [1977].) However, in Ritchie, the trial court’s failure to review the subpoenaed records was ruled unconstitutional, and it is therefore clear that the foregoing language was not intended to support the quashing of the subpoena. Instead, the court meant that the trial court was to determine the materiality of the subpoenaed records, and not the defendant acting alone.
Also misconceived is the fact that the present proceeding is not a "general request” case. The defendants here are not seeking a general exploration of the prosecution’s files, but have targeted specific police reports to find specific exculpatory material, such as that relating to witness information, a request which should not summarily be ignored. (Pennsylvania v Ritchie, supra.)
It is argued by the Police Department that the defense may not subpoena police reports because they normally include Rosario material which by statute may not be obtained by the *265 defense prior to trial or hearing. Again, this contention overlooks defendants’ substantial point that police reports often include material information favorable to the defense from witnesses not called at trial, and therefore not available to the defense as Rosario material.
The Police Department additionally states that items not discoverable under CPL 240.20 and 240.40, such as police reports, may not be obtained indirectly by subpoena as a tool for discovery. However, compulsory process of police reports is based on materiality of those reports to the defense and is not dependent on statutory discovery limitations. In Bowman Dairy Co. v United States (341 US 214, 219 [1951]), the court discussed the parallel relationship between Federal discovery (Fed Rules Grim Pro rule 16) and Federal subpoenas (Fed Rules Crim Pro, rule 17 [c]), stating: "There may be documents and other materials in the possession of the Government not subject to Rule 16. No good reason appears to us why they may not be reached by subpoena under Rule 17 (c) as long as they are evidentiary.”
Additionally, even highly confidential material not subject to discovery is available by subpoena if material. (People v Gissendanner, supra; Pennsylvania v Ritchie, supra; United States v Nixon, supra.)
THE VILARDI RULE
A new and pivotal consideration for the court in deciding whether to grant a pretrial subpoena for police records was introduced in a recent decision (People v Vilardi, 76 NY2d 67 [1990]). Vilardi involves the issue of the prosecution’s failure to disclose exculpatory material to the defense under Brady v Maryland (373 US 83 [1963]). As a matter of due process under the New York State Constitution, the Court of Appeals in Vilardi reversed a conviction for arson based on the prosecution’s failure to disclose an exculpatory police Bomb Squad report which the defense had specifically requested under pretrial discovery.
The Vilardi court (supra, at 77) ruled that where the prosecutor is made aware by a specific discovery request that the defendant considers certain material important to the defense, failure to disclose the material, if exculpatory, is reversible error if a " 'reasonable possibility’ ” is shown that the failure to disclose contributed to the verdict, i.e., that it would have made a difference in the outcome of the trial.
*266 Most notably, the Vilardi test of materiality for specifically requested material now departs from the Federal standard in United States v Bagley (473 US 667 [1985]), which does not distinguish among specific request, general request and no-request cases, but holds that a failure to provide any exculpatory material is unconstitutional if there is a "reasonable probability” that the undisclosed material would have altered the outcome of the trial. Vilardi declines to apply the "reasonable probability” standard and adheres to the "reasonable possibility” rule by distinguishing specific request cases as did United States v Agurs (427 US 97 [1976]), prior to Bagley. Vilardi shares the concept of Agurs that a failure to turn over specifically requested material is " 'seldom, if ever, excusable’ ” (People v Vilardi, supra, at 74).
The Vilardi rule, in my view, applies not only to pretrial discovery, but now places a newly heightened responsibility on the court, as well as the prosecution, when the defense makes a specific request for police records by subpoena. In Vilardi (supra, at 77) the " 'reasonable possibility’ ” test is held to be "the appropriate standard to measure materiality” of information specifically requested by the defense in pretrial discovery. Because this rule is of constitutional dimension, it stands to reason that a double standard is not intended for subpoenaed materials.
Accordingly, the test of materiality of police records specifically subpoenaed, as in this proceeding, must also be whether there is a "reasonable possibility” that such records would make a difference in the outcome of the trial. To quash summarily the subpoenas for specific police reports in this proceeding would unjustifiably ignore the fact that such reports by nature suggest a reasonable possibility that they will make a difference in the outcome of the trial.
MATERIALITY OF POLICE REPORTS
The Police Department does not dispute the relevance of the police reports subpoenaed in this proceeding.
Also apparent is the fact that routine police reports are designed to be both relevant and material. For example, the complaint report (61), complaint follow-up report (DD5), the on-line booking report, and all other routinely kept reports are forms containing specific and pertinent information about a defendant’s arrest and charges. These forms, which are familiar to Judges, may include information favorable to the *267 defendant, for example from witnesses who may not testify at trial and whose data may therefore remain unknown to the defense, as counsel in this proceeding credibly argues. That exactly is what recently occurred in People v Clausell (NYLJ, July 18, 1990, at 22, col 1 [Sup Ct, Queens County]), where exculpatory facts in a routine police report were not disclosed to the defense because a police witness did not testify, requiring the conviction to be vacated.
It is also undisputed in this proceeding that these routine reports contain only purported factual information, and include no work product such as opinions, theories or conclusions of law enforcement officials. To the extent that any such redactions were necessary, I would grant them.
The Office of Court Administration (OCA) of New York State agrees that "required police reports” are relevant and material. It has introduced legislation to provide police reports to the defense as standard pretrial discovery material under CPL 240.20. OCA’s legislative memorandum states that "evidence favorable to the defendant” should be available to the defense by "automatic disclosure,” noting that such reports "now regularly are produced in response to a defense subpoena” (mem of Off of Ct Admin in support of Departmental Bill No. OCA 90-91, at 4).
In People ex rel. Fisher v Carey (77 Ill 2d 259, 396 NE2d 17 [1979]), the Illinois Supreme Court, in a proceeding similar to this one, ruled that subpoenas issued by the Public Defender for routine police reports were relevant, evidentiary and specific under the Federal standard employed by Illinois, were guaranteed under compulsory process and should not be enjoined. The court permitted issuance of the subpoenas immediately after arrest of the accused, subject to the court’s inspection of the reports for relevance, materiality and any necessary redactions.
EFFECT ON CRIMINAL JUSTICE
The Police Department also opposes subpoenas on grounds of impracticality and waste of resources. I have carefully weighed this important concern. However, judicial experience proves the contrary and demonstrates that the court, the prosecution and the defense all substantially benefit. Reversal of convictions and costly retrials are avoidable by giving the defense pretrial access to police reports by subpoena. Wasteful reversals result from failures by the prosecution to disclose exculpatory evidence in police reports to the defense.
*268 Defense access to police reports by subpoena could have avoided the following failures: People v Robinson (133 AD2d 859 [2d Dept 1987]) (undisclosed statement to police by nontestifying witness to murder, implicating persons other than defendant, conviction reversed, new trial); People v Porter (128 AD2d 248 [1st Dept 1987]) (undisclosed police report showing drugs taken from someone other than defendant, remanded to determine if "material” to outcome of trial and, if so, to vacate conviction); People v Lumpkins (141 Misc 2d 581 [Sup Ct, Kings County 1988]) (undisclosed police DD5 report that nontestifying witness told police defendant not murderer and naming others responsible, conviction vacated, new trial); People v Hunter (126 Misc 2d 13 [Sup Ct, NY County 1984]) (nontestifying witness to robbery interviewed by police at arrest scene, exonerating defendant of robbery, not disclosed to defendant before indictment, held prejudicial, indictment dismissed); People v Clausell (supra) (undisclosed drug "buy” report by nontestifying police undercover officer, describing seller wholly in conflict with defendant’s description, conviction vacated, new trial).
These failures to disclose police reports typically occur in good faith. The prosecution often views records from a different perspective than the defense. What may seem insignificant to the prosecution, the defense may find to be critical. (See, accord, mem of Off of Ct Admin in support of Departmental Bill No. OCA 90-91, at 4.) All of these risks are removed by subpoenas giving the defense access to police records.
Also relevant is the experience of trial courts with delay at the brink of trial, or during trial, caused by last-minute discovery by the prosecution of Brady material. This too is available in virtually every case involving police reports where the defense has pretrial access to the reports by subpoena.
Previously noted was the long-standing recognition by the Supreme Court of the right to prepare for trial by compulsory process (United States v Burr, 25 Fed Cas 30, supra). This right simultaneously benefits the criminal justice system by encouraging earlier dispositions of cases without the necessity of trial.
Some of defendants’ subpoenas are for records in cases already dismissed or otherwise completed. Defendants’ counsel concedes this oversight and agrees to withdraw those subpoenas as well as a subpoena on a felony complaint which only a Supreme Court Justice may issue (CPLR 2307 [a]). Attorneys *269 who abuse the subpoena process and the resources of the Police Department with frivolous or stale subpoenas are subject to disciplinary action, which should be readily imposed when justified.
As for the provision of CPLR 2307 (a) that unless the court orders otherwise, subpoenas are to be issued on one day’s notice to the adverse party, given this discretion I dispense with such notice as being duplicative and unnecessary as to police reports. Moreover, in the instant matter the Police Department has chosen to waive notice.
Issuance of the subpoenas will not change or adversely affect the present system in which police reports are often subpoenaed. The Police Department states that it now regularly provides all police reports to the prosecution. There should be no significant burden in supplying an extra copy for the defense when subpoenaed.
It is already the standard practice for police and prosecution to redact from police reports the identity of endangered witnesses or investigations in progress, of undercovers, and other protected information. To assure this, subpoenaed materials should continue to be reviewed by the prosecution before receipt by the defense. Any redactions that are disputed by the defense are reviewable by the court, which also determines issues of materiality.
It is essential that the court’s responsibility in attending to heavy daily court calendars not be impeded by subpoena proceedings. The court’s intervention should be minimal and cooperation between the prosecution and defense is warranted. I disagree with the finding in People v Miranda (115 Misc 2d 533 [Sup Ct, Bronx County 1982]), that court intervention is required in every subpoena case. After review by the prosecution and any appropriate redactions, subpoenaed reports should promptly be turned over to the defense without unnecessary court intervention unless materiality or other matters are disputed.
When police reports are evaluated for materiality, the court and prosecution must be mindful of the due process mandate in Pennsylvania v Ritchie (480 US, supra, at 60), regarding subpoenaed records, that: "the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial.”
*270 Moreover, under the Vilardi rule this monitoring burden is considerable, since disclosure is required whenever there is any "reasonable possibility” that any exculpatory material in the police reports would make a difference in the outcome of the trial. Vilardi (76 NY2d, supra, at 77) cautions the prosecution "to err on the side of disclosure where exculpatory value is debatable.” Therefore, it would usually be prudent for the prosecution, and the court in its discretion, to disclose subpoenaed police reports to the defense without delay in order to avoid continuous monitoring and the risk of reversible error for nondisclosure.
In Ritchie (supra), the court enforced minimum due process standards of compulsory process. However, the trial court in its sound discretion may also disclose subpoenaed materials in the interests of promoting the efficiency of trials, and avoiding costly reversible error.
TRIAL COURT DECISIONS
I respectfully disagree with the recent decision of my colleague in People v Morrison (148 Misc 2d 61 [Crim Ct, NY County, Benitez, J.]), which summarily quashed subpoenas for police reports similar to those in the present proceeding.
Morrison (supra) holds in substance that the police reports were not shown to be evidentiary, and if they were evidentiary the defense would be limited to obtaining them by discovery as exculpatory material under GPL 240.20 (1) (h), and not by subpoena. Specifically, Morrison rules that a document may be subpoenaed only if it demonstrably contains competent evidence that would be admissible at trial. That case also rejects "potential exculpatory evidence” and leads to exculpatory evidence in police reports, as being an insufficient basis for a subpoena (supra, at 64).
Both in Morrison (supra) and the present proceeding, counsel for the defendants contend that the defense may subpoena not only "evidence,” but also "potential evidence” and "leads to evidence” that might exculpate the defendant.
Existing State and Federal decisions do not support the conclusion of Morrison (supra) that police reports are not evidentiary. Authorities disagree with Morrison’s definition equating the term "evidentiary” strictly with competent trial evidence. Moreover, the cases confirm that "potential evidence” and "leads to evidence” are also evidentiary for purposes of a subpoena.
*271 In United States v Nixon (supra, at 702), the court granted a pretrial subpoena for tapes on the ground that there were "valid potential evidentiary uses” for those materials.
In People v Butchino (9 AD2d 597 [3d Dept 1959]), an assault case, it was held error to deny a pretrial subpoena for psychiatric records solely because they would not be competent evidence at the forthcoming trial. The court ruled that such records "ought to have been made available and ought to have been passed upon as to competency and relevancy when the testimony was actually tendered [at trial].” (Supra, at 597.)
Morrison (supra) is likewise directly in conflict with People v Lumpkins (141 Misc 2d, supra, at 588), a murder prosecution, which rejected the People’s claim that a hearsay statement of a witness in a police DD5 report was not "evidence” because it was inadmissible at trial. Lumpkins (supra, at 588) found this to be "possible exculpatory evidence” which must be disclosed to the defense, stating: "it can hardly be doubted that the requirement of due process underlying the Brady rule includes disclosure of exculpatory leads” (emphasis added). See Lumpkins (supra, at 588) for analysis of other cases supporting that conclusion.
Additionally, in People v Di Lorenzo (134 Misc 2d 1000, 1002 [County Ct, Nassau County 1987]), which Morrison (supra) cites with approval, the court holds that subpoenas apply to those items which can be classified "as evidence or potential evidence”.
Various cases employing the Federal test for subpoenas, a standard which Morrison (supra) also adopted, have granted subpoenas for police documents apparently without doubting that they were evidentiary. (Mackey v United States, 351 F2d 794 [DC Cir 1965] [subpoena for police narcotics records approved]; Greenfield v United States, 317 F2d 108 [DC Cir 1963] [subpoena for defendant’s arrest photo granted].)
In People ex rel. Fisher v Carey (supra), the Illinois Supreme Court found that subpoenas from the Public Defender for routine police records were evidentiary.
The view in Morrison (supra) that police reports, if evidentiary, may be sought only by discovery under CPL article 240 does not comport with the fact, as previously discussed, that due process entitles the defense to subpoena any relevant and material documents, including police reports, and that CPL *272 article 610 grants the right of subpoena as an alternative to discovery rights for any such documents.
Notably, Morrison (supra) cites language from Nixon (supra), and Ritchie (supra), although in both of those cited cases the subpoenas were not summarily quashed as in Morrison, but were upheld by the Supreme Court. Additionally Morrison does not consider the test of materiality recently formulated in People v Vilardi (supra), and its important relationship to subpoenas.
Insofar as other New York trial court decisions have summarily quashed subpoenas for routine police reports and have not determined their materiality, I respectfully disagree with those holdings as being contrary to the procedure supported by Pennsylvania v Ritchie (480 US 39, supra; e.g., People v Cammilleri, 123 Misc 2d 851 [Sup Ct, Richmond County 1984]; People v Bolivar, 121 Misc 2d 229 [Crim Ct, NY County 1983]). These decisions also appear to conflict with the principles of People v Vilardi (supra), governing the test of materiality for records specifically requested.
Other cases granting subpoenas for police records have been decided on grounds with which I am unable to concur. (E.g., People v Miranda, supra [holding equates subpoena with discovery, and uses evidence or potential evidence as determining factor, rather than materiality].)
Accordingly, I find that it would be improper to quash summarily the subpoenas before me. As a matter of law, the defendants are entitled to know before trial any exculpatory evidence, including potential evidence or leads to evidence, in the subpoenaed materials if there is a reasonable possibility that it would make a difference in the outcome of their trial.
SUBPOENA PROCEDURE
In this court, materials subpoenaed by the defense are at present normally received initially by the court clerk and are eventually turned over to the defense. The practice to be followed regarding police reports specifically requested, in this proceeding and hereafter before me, will be as follows: Subpoenaed materials will be received by the clerk but will not be delivered to the defense until the prosecution has had a reasonable opportunity to inspect them, normally within three court days, barring exceptional circumstances to be determined by the court. Within that period the prosecution may make any reasonably necessary redactions, for example to *273 protect the identity of endangered witnesses, or investigations in progress, of undercovers, and the like.
Subpoenaed materials will be delivered to the defense within the prescribed period unless the prosecutor affirmatively represents to the court on the record that the prosecutor has inspected the subpoenaed items and that they contain nothing material to the defense under the test of materiality in People v Vilardi (supra).
As to any disputed redactions or representation of nonmateriality by the prosecution, the court in its discretion will examine the materials in camera. The court’s underlying intention is not to intervene in the process where the prosecution after inspection of the materials has no objection to their production to the defense in their original form, or in such redacted form as is not disputed by the defense. The court will intervene only as to matters in dispute as described.
The application to quash is denied. The subpoenas withdrawn by defendants as noted herein are dismissed.