OPINION OF THE COURT
Mary E. Bednar, J.
I
In this juvenile delinquency proceeding, the New York City Police Department, a nonparty, has moved for an order quashing a subpoena duces tecum dated January 3, 1996, which directs the Department to produce, inter alla, "[a]ll documents concerning the [Family Court] Detective Squad, including, without limitation, documents concerning its actual or prospective activities, duties, authority, responsibility, purpose, functions, or procedures”, as well as a subpoena duces tecum, also dated January 3, 1996, which is directed to Detective Bari Moody, which directs her to produce "[a]ll records, documents or papers in [her] possession or control concerning (1) Bernard C. and (2) all guidelines, procedures, reports or papers pertaining to the operation, goals, purposes and procedures of the Manhattan Family Court Detective Squad”.
By petition filed on October 3, 1995, respondent is alleged to have committed acts which, were he an adult, would constitute the crimes of attempted burglary in the second degree, attempted burglary in the third degree, criminal trespass in the third degree and possession of burglar’s tools.
At his initial appearance, the presentment agency served the respondent with a "Voluntary Disclosure Form” (VDF). The VDF gave respondent notice, in accordance with Family *815 Court Act § 330.2 (2), that on September 19, 1995, respondent made a statement to Detective Bari Moody of the "Family Court Detective Squad” in the "Family Ct. Detective Squad Room”, and that the presentment agency intends to use that statement at the fact-finding hearing. A copy of respondent’s written statement is appended to the VDF.
On November 1, 1995, respondent filed an omnibus motion seeking, inter alla, a Huntley hearing (see, Family Ct Act § 330.2; CPL 710.20 [3]); and a Wade hearing (see, Family Ct Act § 330.2; CPL 710.20 [6]). By order dated December 11, 1995, I directed that Wade and Huntley hearings be conducted.
The basis for respondent’s request for the issuance of the subpoenas duces tecum, and the Police Department’s motion to quash those subpoenas, supported by the presentment agency, is set forth within the motion papers. Summarized briefly, respondent alleges that on September 19, 1995, he arrived at the New York County Family Court in accordance with the directions of a Family Court appearance ticket issued by the arresting officer. After an interview with a probation officer, the probation officer directed them to proceed to the office of Police Detective Bari Moody, who is assigned to the "Family Court Detective Squad”. After allegedly advising the respondent and his mother of his Miranda rights, respondent gave a statement to the detective which he contends is an involuntary statement. Respondent also alleges that the "Family Court Detective Squad” took advantage of his required presence in the Family Court building to meet with the Probation Department to conduct an interrogation designed to elicit incriminating statements. Respondent contends that these activities by the "Family Court Detective Squad” are a pattern or practice followed by the Police Department, and that the practice is inherently deceptive. Accordingly, there is a need for disclosure of the Police Department’s records relating to the creation, functions, and procedures of the "Family Court Detective Squad”, as well as for any police records which relate to respondent’s interaction with members of the detective squad.
The presentment agency concedes that Detective Moody interrogated the respondent on September 19, 1995. However, the presentment agency denies that there is any connection between the Probation Department and the New York City Police Department. Therefore, there is no basis for disclosure of Police Department records relating to the "Family Court Detective Squad”, nor respondent’s interactions with members of that detective squad.
*816 II
Before addressing the motions, it is necessary to consider the unique process which governs the period of time from the arrest of an alleged juvenile delinquent until the presentment agency files a juvenile delinquency petition, as well as the role played by various governmental agencies.
Pursuant to Family Court Act § 305.2 (2), a police officer or peace officer "may take a child under the age of sixteen into custody without a warrant in cases in which he may arrest a person for a crime under article one hundred forty of the criminal procedure law”.
After taking a child into custody, the officer has an obligation to make every reasonable effort to notify the child’s parent, custodian, or person legally responsible for the child’s care, that the child has been taken into custody (Family Ct Act § 305.2 [3], [4]; see, People v Bonaparte, 130 AD2d 673, 674, Iv denied 70 NY2d 703; People v Salaam, 187 AD2d 363, affd 83 NY2d 51). After making every reasonable effort to give the parental notice required by Family Court Act § 305.2 (3), the officer has three options. The officer may release the child to the custody of his parent, custodian, or other person legally responsible for his care, upon the issuance of a Family Court appearance ticket to the child and the person to whom the child is released (Family Ct Act § 305.2 [4] [a]; see, Family Ct Act § 307.1; Matter of Jennifer M., 125 AD2d 830, 831; Matter of Claude E., 124 Misc 2d 261, 263);[1] or the officer may immediately take the child directly to the Family Court located in the county where the crime occurred (Family Ct Act § 305.2 [4] [b]), "unless the officer determines that it is necessary to question the child, in which case he may take the child to a facility designated by the chief administrator of the courts as a suitable place for the questioning of children or, upon the consent of a parent or other person legally responsible for the care of the child, to the child’s residence and there question him for a reasonable period of time” (id.; see, 22 NYCRR 205.20); or the officer may take the child to a certified juvenile detention facility.
*817 Where, as here, the child has been released to a parent or custodian upon a Family Court appearance ticket,[2] the child is to be directed to appear at a designated probation service on a specified return date (Family Ct Act § 307.1 [1]).
The role of the probation service, or in New York City, the New York City Department of Probation, during the postarrest, prepetition period is set forth in Family Court Act § 308.1; 22 NYCRR 205.22, 205.23 and 9 NYCRR part 354.
Family Court Act § 308.1 (1) provides that "[r]ules of court shall authorize and determine the circumstances under which the probation service may confer with any person seeking to have a juvenile delinquency petition filed, the potential respondent and other interested persons concerning the advisability of requesting that a petition be filed”. Pursuant to 22 NYCRR 205.22 (a), the Probation Department shall conduct preliminary conferences with any person seeking to have a juvenile delinquency petition filed, the potential respondent, and other interested persons, including the complainant or victim, on the day that those persons appear at the Probation Department. The purpose of this mandatory preliminary conference is to permit probation to ascertain "the advisability of requesting that a juvenile delinquency petition be filed and in order to gather information needed for a determination of the suitability of the case for adjustment” (22 NYCRR 205.22 [a]; see, 9 NYCRR 354.1 [c]).
With specified exceptions, not relevant here (see, Family Ct Act § 308.1 [3], [4]), the Probation Department is authorized to "adjust” cases prior to the filing of a juvenile delinquency petition (Family Ct Act § 308.1 [2]). Although the term "adjustment” is "not defined statutorily” (Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 308.1, at 320), "adjustment generally means the informal consensual resolution of a case under probation services auspices” (id.; see, Matter of Aaron J., 80 NY2d 402, 406 [adjustment is a "nonadversarial dispute resolution mechanism”]; see also, 9 NYCRR 354.1 [e]).
At the preliminary conference, probation is required to advise each participant that he or she has the right to participate in the adjustment process (22 NYCRR 205.22 [d] [1]); that probation cannot compel any person to appear at any confer *818 ence (Family Ct Act § 308.1 [11]; 22 NYCRR 205.22 [d] [2]); that the victim is entitled to have access to the presentment agency at any time to request that a juvenile delinquency petition be filed (Family Ct Act § 308.1 [8]; 22 NYCRR 205.22 [d] [3]); that the adjustment process may continue for up to two months, with a possible extension for an additional two months (Family Ct Act § 308.1 [9]; 22 NYCRR 205.22 [d] [4]); that statements made to probation are subject to the confidentiality provisions of Family Court Act § 308.1 (6) and (7) (22 NYCRR 205.22 [d] [5]); and that if the adjustment process is commenced but not successfully completed, the participants will be notified of that fact and that probation will refer the case to the presentment agency (22 NYCRR 205.22 [d] [6]).
After conducting the mandatory preliminary conference, if the Probation Department determines that a case is suitable for the adjustment process, it is required to include the potential respondent, victim or complainant, and other interested persons, in the adjustment process (22 NYCRR 205.23 [a]). Probation may discontinue the adjustment process at any time if the potential respondent, victim, or complainant requests that it do so (22 NYCRR 205.23 [c] [1]; 9 NYCRR 354.5 [e] [2] [ii]), or if the potential respondent refuses to cooperate with probation or any agency to which the potential respondent has been referred (22 NYCRR 205.23 [c] [2]; see, 9 NYCRR 354.5 [e] [2] [iii]). If adjustment is successful (see, 9 NYCRR 354.5 [d] [1] [ii]), no juvenile delinquency petition will be filed. If adjustment is either not attempted or attempted but not "successfully concluded” (22 NYCRR 205.23 [d] [1]), the case is referred to the presentment agency.
Ill
Because the probation preliminary conference and the adjustment process, if commenced, occur, with one exception, prior to the filing of a juvenile delinquency petition,[3] and because the goal of the adjustment process is a resolution of the issues giving rise to the child’s arrest without a formal fact-finding hearing and judicially imposed disposition (see, Matter of Aaron J., 80 NY2d, at 406, supra), both the statute and rules separate the adjustment process from the prosecution of a juvenile delinquency petition. To that end, all statements made by a potential respondent at a preliminary confer *819 ence or during the adjustment process are confidential. Any such statements may not be transmitted to the presentment agency by the Probation Department (Family Ct Act § 308.1 [6]; 22 NYCRR 205.22 [d] [5]), nor may any statement made by a respondent to the Probation Department prior to the filing of a delinquency petition be admitted into evidence at a fact-finding hearing (Family Ct Act § 308.1 [7]; see, Matter of David J., 70 AD2d 276, 279; Matter of Luis R., 92 Misc 2d 55, 58; People v Price, 100 Misc 2d 372, 377; Matter of Richard J., 122 Misc 2d 839, 843).
In this case, respondent appeared for a preliminary conference with the Probation Department on September 19, 1995. During the conference, respondent gave a statement to the probation officer setting forth his version of the underlying incident. According to respondent, at the conclusion of the preliminary conference, the probation officer "referred” him and his mother to the office of the "Family Court Detective Squad”, where he was subjected to further questioning by Police Detective Bari Moody. Although he does not concede that the detective provided him with Miranda warnings, he contends that, even if such warnings were provided, he did not knowingly, intelligently, and voluntarily waive his rights. Respondent claims that because of his immediate referral to the "Family Court Detective Squad” by the probation officer, he was unaware that the shield of confidentiality attaching to his statements to the probation officer was no longer applicable or, in other words, that he was unable to distinguish between a probation preliminary conference and police interrogation. The presentment agency denies that there was any commingling of the probation process and the police interrogation, and it asserts that respondent knew or should have known that any statements made to Detective Moody could be used as evidence against him.[4] *820 Because the probation preliminary conference and the adjustment process are not critical stages of a juvenile delinquency proceeding, the juvenile is not entitled to counsel during the preliminary conference and the adjustment process (see, Family Ct Act § 249; Matter of David J., 70 AD2d, at 279, supra; Matter of Frank H., 71 Misc 2d 1042; Matter of Anthony S., 73 Misc 2d 187),[5] one must question whether the Police Department strategically intercepted respondent upon the conclusion of the probation preliminary conference and before counsel had been assigned to him.[6]
IV
With respect to the Police Department’s motion to quash the subpoenas duces tecum, I note that as a court of record (see, NY Const, art VI, § 1 [b]; Judiciary Law § 2 [8]; Matter of Terry D., 81 NY2d 1042, 1044), the Family Court may issue a subpoena ad testificandum and a subpoena duces tecum (Judiciary Law § 2-b [1]; Family Ct Act § 153; Matter of Terry D., 81 NY2d, at 1044, supra).
While, as a general rule, the use of a subpoena duces tecum to conduct discovery or to ascertain the existence of evidence is prohibited (see, People v Gissendanner, 48 NY2d 543, 551; Matter of Terry D., 81 NY2d, at 1044, supra; Mestel & Co. v Smythe Masterson & Judd, 215 AD2d 329; Matter of County of Nassau *821 v Sullivan, 194 AD2d 236, 239), it is permissible to utilize a subpoena duces tecum to compel the production of specific documents that are relevant and material to the facts at issue in a pending judicial proceeding (see, Matter of Terry D., 81 NY2d, at 1044, supra; People v Thurston, 209 AD2d 976, 977, Iv denied 85 NY2d 915; Matter of Constantine v Leto, 157 AD2d 376, 378, affd for reasons stated 77 NY2d 975).
While a subpoena duces tecum may not be utilized to circumvent statutory discovery provisions (see, Matter of Constantine v Solomon, 194 AD2d 538, 539; Matter of Decrosta v State Police Lab., 182 AD2d 930, 931; Matter of Constantine v Leto, 157 AD2d, at 378, supra), and the relevant discovery statute (Family Ct Act § 331.2) does not appear to provide for the disclosure of the material respondent seeks, the Family Court Act provision is not all-inclusive (see, Family Ct Act § 331.3 [1] [c]).
Insofar as the subpoenas duces tecum directed to the New York City Police Department and Detective Moody call for the production of internal department documents concerning the detective squad, respondent has neither demonstrated that such property is material to his preparation for a Huntley hearing, nor can such a wide ranging request be deemed reasonable. Put simply, respondent has made no showing whatsoever that these internal procedural documents of the Police Department will bear on the issue of whether his statement to Detective Moody was voluntary. Accordingly, the subpoena duces tecum directed to the New York City Police Department is quashed in its entirety, and the subpoena duces tecum directed to Detective Moody is quashed to the extent that it compels the production of materials not specifically related to this respondent (see, Matter of Constantine v Leto, 157 AD2d, at 378, supra; Matter of Decrosta v State Police Lab., 182 AD2d, at 931, supra; Matter of County of Nassau v Sullivan, 194 AD2d, at 239, supra).
With respect to property in the possession, of Detective Moody which relates to her interaction with the respondent on September 29, 1995, a different result is appropriate.
Juvenile delinquency proceedings are, at the very least, quasi-criminal in nature (Matter of Gregory W., 19 NY2d 55, 62; Matter of Quinton A., 49 NY2d 328, 335), and juveniles are entitled to the same due process rights as adults (Matter of Andrew D., 99 AD2d 510, 511; see, In re Gault, 387 US 1; In re Winship, 397 US 358), including the right of compulsory process, which is "a fundamental element of due process of law” *822 (Washington v Texas, 388 US 14, 19). Although the exact contours and reach of the 6th Amendment right of compulsory process is not settled (see, Pennsylvania v Ritchie, 480 US 39, 55-56), courts and commentators have acknowledged that the right may extend to the production of evidence relevant to the defense of a criminal proceeding (see, United States v Nixon, 418 US 683, 691 [suggesting that right of compulsory process may require production of evidence in criminal case]; Pennsylvania v Ritchie, 480 US, at 58-59, supra [disclosure of confidential records ordered applying due process analysis]; Taylor v Illinois, 484 US 400, 406-408 [right of compulsory process extends beyond mere right to subpoena witnesses]; People v Thurston, 209 AD2d, at 976, supra [right of compulsory process extends to production of documents]; People v Harder, 146 AD2d 286 [following due process analysis set forth in Ritchie, directs in camera inspection of confidential records], affd after remittal 153 AD2d 976; People v Burnette, 160 Misec 2d 1005 [Sixth Amendment provides right to compel production of police records]; People v Cabon, 148 Misc 2d 260, appeal dismissed 150 Misc 2d 1028, Iv denied 183 AD2d 579; see also, Westen, The Compulsory Process Clause, 73 Mich L Rev 71 [1974]; Montoya, A Theory of Compulsory Process Clause Discovery Rights, 70 Ind LJ 845 [1995]).
Although the Court of Appeals has characterized the right of compulsory process as "essentially a trial right enabling an accused to present his own version of the facts to the trial jury” (People v Chipp, 75 NY2d 327, 336, cert denied 498 US 833), [7] Chipp concerns the right of a criminal defendant to use compulsory process to require a complainant or witness to testify at a Wade hearing, rather than the production of documentary evidence, which is sought here. Moreover, the concerns stated by the Court in Chipp, that a criminal defendant might misuse Wade hearings to harass identifying witnesses, and use the hearing as an unauthorized discovery proceeding, are either not present here, or are curbed by judicial review of requested materials (see, People v Cabon, 148 Misc 2d 260, supra).
While a suppression hearing "does not involve a determination of * * * guilt or innocence” (People v Chipp, 75 NY2d, at 337, supra), but rather "the propriety of certain challenged *823 official conduct and the relationship between the unlawful official conduct, if any, and the evidence the defendant seeks to exclude” (People v Ayala, 75 NY2d 422, 429-430), the court is nevertheless required to "fully and independently resolve, as a matter of law, that the evidence was not obtained in violation of the fundamental constitutional rights of the accused” (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 378). Therefore, given the interests involved in the suppression hearing, and the minimal impact that the production of the limited documentary evidence for in camera inspection will have on the proceedings, Detective Moody is directed to comply with the subpoena duces tecum to the extent that it directs her to produce evidence in her possession relating to her interaction with this respondent on September 29, 1995. The evidence shall be submitted for in camera inspection as soon as practicable.

. A Family Court appearance ticket is a written notice issued and subscribed by a police or peace officer directing a child and his parent or other person legally responsible for his care to appear at a designated probation service on a specified return date in connection with the child’s alleged commission of the crime or crimes specified on the appearance ticket (Family Ct Act § 307.1 [1]). Respondent was, in fact, released by the arresting officer upon the issuance of a Family Court appearance ticket.

. If the officer takes the child to a juvenile detention facility, the agency operating the facility may also release the child upon the issuance of a Family Court appearance ticket (Family Ct Act § 307.3; 22 NYCRR 205.21 [b]).

. The exception is where the court refers a respondent for adjustment services at the initial appearance (see, Family Ct Act § 320.6 [2]; Matter of Aaron J., 80 NY2d 402, supra).

. The function of the "Family Court Detective Squad” is explained by a reply affirmation submitted by the Assistant Corporation Counsel as well as an article which appeared in the New York Daily News on September 1, 1995. According to the Assistant Corporation Counsel, the "Family Court Detective Squad” conducts "debriefing [of] court-involved youngsters” and "enhance[s] the precinct arrests by gathering additional information * * * by interviewing the respondents”. The Daily News article states, inter alla, that "[i]n a move to treat juvenile criminals as seriously as adult offenders, a detective squad is now assigned to Family Court to strengthen cases, pick up violent youths and gather intelligence on other crimes. The first-of-its-kind squad, working in Manhattan Family Court, is a key element in the Police Department’s youth crime strategy”. The commander of the "Family Court *820 Detective Squad”, Sergeant Michael Rodriguez, is quoted as stating, " 'When they come in here, and some of them are 13, they’re just kids. They have a hard exterior, but they break down, they act like kids’ ”.

. Although the Family Court rules provide that the Probation Department "shall permit any participant who is represented by a lawyer to be accompanied by the lawyer at any preliminary conference” (22 NYCRR 205.22 [a]), and that the Probation Department "shall permit any participant who is represented by a lawyer to be accompanied by the lawyer at any [adjustment] conference” (22 NYCRR 205.23 [a]), those provisions are of little utility to individuals, like this respondent, who must rely on the court to appoint counsel pursuant to Family Court Act § 249. While the right to counsel in a juvenile delinquency proceeding is indisputable (see, Family Ct Act § 301.1), the right to the appointment of counsel by the court does not attach until "the time the respondent first appears before the court” (Family Ct Act § 320.3), which in the normal course, would be upon a "pre-petition hearing” application (Family Ct Act § 307.4), or the initial appearance upon a petition (Family Ct Act § 320.1).

. I note that the Police Department’s use of the designation "Family Court Detective Squad” might cause confusion as to the squad’s role and purpose (see, e.g., Judiciary Law § 3 [use of term " 'court’ ” in reference to any body, board, bureau, association, organization or corporation, in such manner as to be calculated reasonably to lead to belief that entity is vested with judicial power or is part of judicial system of the State is prohibited]; see also, 1984 Atty Gen [Inf Opns] 87).

. Chipp (supra) does not categorically hold the right of compulsory process to be inapplicable to suppression hearings, and it has not been construed in that manner (see, People v Peterkin, 75 NY2d 985, 986; People v Morris, 186 AD2d 44; People v Taylor, 186 AD2d 367, Iv denied 80 NY2d 1030).