156 F.3d 340
 DESHAWN E., by his parent, CHARLOTTE E., and Anthony C., by
his parent, Valerie C., individually and on behalf
of all others similarly situated,
Plaintiffs-Appellants,
v.
Howard SAFIR, in his official capacity as Commissioner of
the New York City Police Department; Raul Russi, in his
official capacity as Commissioner of the New York City
Department of Probation; Peter Reinharz, in his official
capacity as Chief of the Family Court Division of the New
York City Law Department; and Michael Rodriguez, in his
official capacity as police sergeant and head of the
Manhattan Family Court Detective Squad, Defendants-Appellees.
 Docket No. 97-7410.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 30, 1997.
Decided Sept. 16, 1998.
 
 Jane L. Gordon, (Paul A. Crotty, Stephen McGrath, Georgia Pestana) Corporation Counsel of the City of New York, New York City, for Appellees.
 Martin M. Lucente, (Jane M. Spinak, and Henry S. Weintraub) The Legal Aid Society, Juvenile Rights Division, New York City, for Appellants.
 Before: CARDAMONE, WALKER, AND JACOBS, Circuit Judges.
 JOHN M. WALKER, JR., Circuit Judge.
 
 
 1
 Plaintiffs-appellants, a certified class of "all children arrested on possible delinquency charges who are summoned to appear at the probation service in a Family Court building and are interrogated by members of the New York City Police Department's Detective Squad" appeal from a decision and judgment entered by the United States District Court for the Southern District of New York (John S. Martin, Jr., Judge ), granting defendants' motion for summary judgment, denying plaintiffs' motion for a preliminary injunction and dismissing the complaint. Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 challenging the policies and practices of the Family Court Detective Squad ("Squad") in conducting interrogations of children facing possible delinquency charges on the ground that: (1) the Squad's interrogations are so coercive as to produce statements that must be deemed involuntary under the Fifth and Fourteenth Amendments; (2) the Squad elicits involuntary waivers of plaintiffs' Miranda rights in violation of the Fifth and Fourteenth Amendments; and (3) questioning by the Squad without counsel violates the Sixth and Fourteenth Amendments. We affirm.
 
 BACKGROUND
 
 2
 Under the New York Family Court Act ("FCA"), the police "may take a child under the age of sixteen into custody without a warrant in cases in which [they] may arrest a person for a crime under article one hundred forty of the criminal procedure law." FCA § 305.2(2). After taking a child into custody, a police officer is directed to make "every reasonable effort" to notify the child's parent, guardian, or person legally responsible for the child's care that the minor has been taken into custody. See FCA §§ 305.2(3), (4). After making reasonable efforts to notify the parent or guardian, the police have three options: (1) issue the minor an appearance ticket and release the child to the custody of his or her parent or guardian; (2) take the juvenile to Family Court or another authorized and suitable location or the child's residence for questioning; or (3) take the child to a juvenile detention facility. See FCA § 305.2(4).
 
 
 3
 If the juvenile has been given an appearance ticket and released, the child must appear at Probation Services ("Probation") on a specified return date. See FCA § 307.1(1). Once the juvenile and parent or guardian appear, Probation conducts a preliminary conference to determine whether to file a delinquency proceeding or to "adjust" the case. Adjustment is a process in which Probation meets informally with the juvenile and his or her parent or guardian to resolve the possible charges without the filing of a delinquency petition. See FCA § 308.1(2); In re Aaron J., 80 N.Y.2d 402, 406, 590 N.Y.S.2d 843, 605 N.E.2d 330 (1992) (adjustment is a "nonadversarial dispute resolution mechanism"). At the preliminary conference, Probation is required to advise juveniles that they can participate in the adjustment process, see 22 NYCRR § 205.22(d)(1), and to notify each juvenile about certain rights with regard to the adjustment process. Juveniles must then agree to participate in the adjustment process.
 
 
 4
 All statements made by juveniles during the preliminary conference and adjustment process are confidential. Probation cannot communicate to the Presentment Agency, the agency with responsibility for filing a juvenile delinquency petition, any statement made to it by the juvenile, see FCA § 308.1(6), and no statement made by the juvenile during the adjustment process can be "admitted into evidence at a fact-finding hearing or ... at any time prior to a conviction," FCA § 308.1(7). Juveniles are not assigned or entitled to counsel during the adjustment proceedings, but a child may retain private counsel. See 22 NYCRR §§ 205.22(a), 205.23(a). After the preliminary conference, Probation determines whether a case is suitable for the adjustment process. See id. If adjustment is successful, no delinquency petition is filed. If a case is not successfully adjusted the case is referred to the Presentment Agency and a delinquency proceeding may be commenced. See id.
 
 
 5
 In August of 1995, a detective squad initially known as the "Family Court Detective Squad" and renamed the "Juvenile Crime Squad" began to work on the fourth floor of the Manhattan Family Court Building, near the office of the Probation Department. According to the City of New York, the function of the Squad is to "strengthen cases, pursue accomplices, apprehend persons selling guns to minors, conduct lineups, locate witnesses and complainants, and execute warrants."
 
 
 6
 The Squad approaches a juvenile and his or her parent or guardian when, as directed by their appearance ticket, they come to the Family Court for a preliminary conference with Probation. These interrogations occur in an interview room that is decorated with police signs, posters and notices, and the parent or guardian is always present. Although there is some dispute as to whether Miranda warnings are always given, the child and the parent or guardian are supposed to be read their Miranda rights, and both are supposed to sign a Miranda waiver. Interpreters and Spanish-language Miranda forms are supposed to be provided for Spanish-speaking children and their parents or guardians. After a Miranda waiver is signed by both the juvenile and the parent or guardian, the Squad questions the minor about the crime the child is alleged to have committed as well as other unresolved crimes. Generally, the interviews last between 30 to 45 minutes.
 
 
 7
 After the juvenile has been interviewed by the Squad, delinquency petitions may be filed against him or her. The Presentment Agency has given written notice of its intent to use statements made by the juveniles to the Squad in hearings in family court delinquency proceedings. However, as of the date of oral argument, none of these statements have been used in any hearings on a delinquency petition.
 
 
 8
 In June of 1996, the named plaintiffs, two juveniles, Deshawn E. and Anthony C. represented by their parents Charlotte E. and Valerie C., filed this action, pursuant to 42 U.S.C. § 1983, in New York State Supreme Court seeking declaratory and injunctive relief, claiming that the Squad's interrogations were so coercive that they violated the plaintiffs' rights under the Fifth and Fourteenth Amendments and that the Squad's interrogations without the presence of counsel violated the plaintiffs' Sixth and Fourteenth Amendment rights. The defendants removed this action to the district court on the ground that it was based on a federal question. Plaintiffs moved for class certification, to which defendants consented, and the district court certified the class. Plaintiffs subsequently filed a motion for a preliminary injunction; the defendants cross-moved for summary judgment. Both sides began to undertake limited discovery. The defendants refused to produce certain memoranda on the ground that they were protected by the work-product privilege. Defendants then obtained an order staying all discovery until disposition of their summary judgment motion.
 
 
 9
 The district court denied plaintiffs' motion for a preliminary injunction and granted defendants' motion for summary judgment on the ground that "plaintiffs have not established a federal cause of action." Deshawn E. v. Safir, No. 96 Civ. 5296 JSM, 1997 WL 107544, at * 1 (S.D.N.Y. Mar. 10, 1997). Because the district court found that there was no federal claim, it declined to exercise supplemental jurisdiction over the state law claims and dismissed the complaint. Id. at * 3-4. This appeal followed.
 
 DISCUSSION
 I. Jurisdiction
 
 10
 During oral argument a question was raised as to whether this class action is justiciable. We asked the parties to submit letter briefs on this issue.
 
 
 11
 To establish standing in federal court, any party bringing a lawsuit must allege an actual case or controversy. See O'Shea v. Littleton, 414 U.S. 488, 493, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Specifically, a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury. See Northeastern Florida Contractors v. City of Jacksonville, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future. See City of Los Angeles v. Lyons, 461 U.S. 95, 105-06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).
 
 
 12
 In Lyons, the plaintiff sought declaratory and injunctive relief against the Los Angeles police because he claimed that he had been illegally choked by Los Angeles police officers. Id. at 98, 103 S.Ct. 1660. Although he alleged that the Los Angeles police routinely applied choke holds and that he faced a threat of being illegally choked again in the future, the Supreme Court held that plaintiff's allegations of future injury were too speculative and dismissed the case for lack of standing. Id. at 109-11, 103 S.Ct. 1660. The Supreme Court concluded that in order to allege standing Lyons would need to establish "(1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, ... or, (2) that the City ordered or authorized police officers to act in such manner." Id. at 106, 103 S.Ct. 1660.
 
 
 13
 Applying Lyons to this case, we find that the plaintiffs have standing to seek equitable relief. Unlike Lyons, the plaintiffs in this case allege that they, as a certified class, are likely to suffer future interrogations by the Squad. See Nicacio v. INS, 768 F.2d 1133, 1136-37 (9th Cir.1985), amended, 797 F.2d 700, 702 (9th Cir.1985) (finding plaintiffs in class action suit had standing to seek prospective relief). Further, unlike Lyons, the plaintiffs in this case allegedly continue to suffer harm from the challenged conduct because the information secured by the Squad is used to enhance their cases and to obtain plea bargains. See Marisol A. v. Giuliani, No. 95 Civ. 10533 (RJW), 1998 WL 274472, at * 8 & n. 4 (S.D.N.Y. May 27, 1998) (plaintiffs "were still alleging harm from inappropriate placements").
 
 
 14
 Finally, this case is distinguishable from Lyons because, in Lyons, there was no proof of a pattern of illegality as the police had discretion to decide if they were going to apply a choke hold and there was no formal policy which sanctioned the application of the choke hold. In contrast, the challenged interrogation methods in this case are officially endorsed policies; there is a likelihood of recurring injury because the Squad's activities are authorized by a written memorandum of understanding between the Corporation Counsel and the Police Commissioner. In addition, plaintiffs' complaint alleges that the New York Police Department "has plans to and is in the process of instituting Detective Squads in the Family Court buildings in the Bronx, Brooklyn, and Queens." Thus, unlike Lyons, "the City ordered or authorized [the Squad] to act in such manner," Lyons, 461 U.S. at 106, 103 S.Ct. 1660, and plaintiffs have standing to seek injunctive relief. Compare LaDuke v. Nelson, 762 F.2d 1318, 1324, 1326 (9th Cir.1985) (concluding that there was standing to seek an injunction in part because official government policy sanctioned challenged practice), and Franklin v. City of Chicago, 102 F.R.D. 944, 948 (N.D.Ill.1984) (finding that plaintiffs had standing in that there was evidence of recurrence because the policy required police to use challenged procedure), with Curtis v. City of New Haven, 726 F.2d 65, 68 (2d Cir.1984) (finding plaintiffs lacked standing because they could not prove that they would be assaulted with mace in the future absent any police department order authorizing the use of mace in the illegal manner challenged by the plaintiffs).
 
 
 15
 Similarly, an issue was raised as to whether the case was moot because the named representatives were already interrogated and therefore they would receive no benefit from the prospective remedy sought here. Cf. Fox v. Board of Trustees of State Univ. of New York, 42 F.3d 135, 140 (2d Cir.1994) (students' claim for declaratory and injunctive relief moot because plaintiffs, an uncertified class, were no longer enrolled at school and would not benefit from the relief sought).
 
 
 16
 A case is moot when "the parties lack a legally cognizable interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (citation and quotation marks omitted). We conclude that the class representatives continue to maintain a personal stake in the outcome of this appeal because some injury remains that could be redressed by declaratory relief from this court. Plaintiffs seek declaratory and injunctive relief including, inter alia, the prohibition of any use in family court delinquency proceedings of statements taken by the Squad. A favorable decision by this court would entitle the class to relief in the form of exclusion of their statements in their delinquency proceedings. Granting the requested injunctive and declaratory relief would redress the named plaintiffs' injury and provide future relief for other members of the class. Therefore this case is not rendered moot.
 
 II. Summary Judgment
 
 17
 We review a grant of summary judgment de novo. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996). We will affirm a district court's grant of summary judgment if we find, based on the record when viewed in the light most favorable to the non-moving party, that there is no general issue of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 
 18
 Section 1983 imposes civil liability on any person who, acting under color of state law, deprives a United States citizen of a federal constitutional or statutory right. See 42 U.S.C. § 1983. For plaintiffs to prevail under § 1983, they must prove a deprivation of a constitutional right. We now turn to a consideration of each of plaintiffs' constitutional claims.
 
 III. Fifth Amendment
 
 19
 Plaintiffs argue that the interrogations by the Squad violate their Fifth Amendment right against self-incrimination because the Squad fails to give Miranda warnings before questioning them and that, even when they give Miranda warnings, the warnings are inadequate. Plaintiffs also claim that the Squad elicits involuntary waivers of Miranda rights.
 
 
 20
 The Squad's failure to inform plaintiffs of their rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not, without more, result in § 1983 liability. While a defendant has a constitutional right not to have a coerced statement used against him, a defendant does not have a constitutional right to receive Miranda warnings. See New York v. Quarles, 467 U.S. 649, 654, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (defendant does not have a constitutional right to receive Miranda warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination). The remedy for a violation of the right against self-incrimination is "the exclusion from evidence of any ensuing self-incriminating statements" and "not a § 1983 action." Neighbour v. Covert, 68 F.3d 1508, 1510 (2d Cir.1995) (per curiam), cert. denied, 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996). Although a juvenile's Fifth Amendment rights may be violated by the Squad's interrogations in an individual case, the appropriate remedy is suppression following a hearing pursuant to People v. Huntley, 15 N.Y.2d 72, 77-78, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), to determine the admissibility of a statement made by a criminal defendant, and not a § 1983 class action.
 
 
 21
 While plaintiffs cannot base a § 1983 claim solely on a law enforcement officer's failure to administer Miranda warnings, see Neighbour, 68 F.3d at 1510-11; Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 16-17 (1st Cir.1995), a § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiffs in a criminal proceeding. See Weaver v. Brenner, 40 F.3d 527, 535 (2d Cir.1994).
 
 
 22
 The Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that a person shall not be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Neither the Constitution nor the Supreme Court's decision in Miranda, however, requires the reading of the four warnings as a necessary condition to the admission of a defendant's inculpatory statement. As we have recognized, "the Miranda warnings are prophylactic only; they are not constitutional rights in themselves.... The reading of (or failure to read) Miranda warnings only has a presumptive effect on whether or not an individual's Fifth Amendment rights may have been violated." Weaver, 40 F.3d at 534.
 
 
 23
 As the Supreme Court has recognized, the Miranda warnings are only "suggested" and "were not intended to 'create a constitutional straightjacket.' " Michigan v. Tucker, 417 U.S. 433, 444, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) (quoting Miranda, 384 U.S. at 467, 86 S.Ct. 1602). Thus in Tucker, even though the police failed to read the defendant his fourth Miranda warning (the right to have an attorney appointed for him if he could not afford one), the Court did not view that failure as a bar to the use of the fruits of the defendant's statements at trial. See id. at 450-51, 94 S.Ct. 2357.
 
 
 24
 The key inquiry for Fifth Amendment purposes is whether the statement introduced in a judicial proceeding was obtained, not by failure to read a defendant the Miranda warnings, but by coercion--an inquiry determined by the totality of the circumstances, see Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Haynes v. Washington, 373 U.S. 503, 513-14, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); 18 U.S.C. § 3501(b) (listing the Miranda warnings as only two of five factors for the trial judge to weigh in determining voluntariness and providing that the absence of any of the five factors need not be dispositive).
 
 
 25
 Even if it can be shown that a statement was obtained by coercion, there can be no Fifth Amendment violation until that statement is introduced against the defendant in a criminal proceeding. See Weaver, 40 F.3d at 535; Riley v. Dorton, 115 F.3d 1159, 1164-65 (4th Cir.1997); Mahan, 64 F.3d at 17; Mahoney v. Kesery, 976 F.2d 1054, 1061-62 (7th Cir.1992); Davis v. City of Charleston, 827 F.2d 317, 322 (8th Cir.1987). But see Cooper v. Dupnik, 963 F.2d 1220, 1238-45 (9th Cir.1992) (en banc). In Weaver, 40 F.3d at 535, we held that to constitute a Fifth Amendment violation "use of the [coerced] statement at trial is not required," but that there must be some "use or derivative use of a compelled statement at any criminal proceeding against the declarant."
 
 
 26
 Plaintiffs claim that the use requirement we established in Weaver has been satisfied here because the defendants have announced their intention to use the statements taken by the Squad at hearings in family court delinquency proceedings. However, such an intention is insufficient to trigger a Fifth Amendment violation. The planned future use of an allegedly coerced statement is simply too remote and attenuated to form the basis of a present constitutional claim. Cf. Hale v. Henkel, 201 U.S. 43, 68-69, 26 S.Ct. 370, 50 L.Ed. 652 (1906) ("the possibility that information given by the witness [pursuant to a grant of immunity under a state statute] might be used" by the Federal government is, as a matter of law, "a danger so unsubstantial and remote" that it fails to trigger the right to invoke the privilege).
 
 
 27
 The argument that the future use of these statements may support a constitutional claim fails for another reason as well. Plaintiffs' claim is a facial challenge to the Squad's practices. A facial challenge will only succeed if there is no set of circumstances under which the challenged practices would be constitutional. United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Therefore, even if we were to hold that an announced intention to use a statement taken in violation of the right against self-incrimination was actionable under the Fifth Amendment, the fact that such an intention is not announced in every case defeats the facial challenge. In this context, we find that the appropriate way to protect against the use of a coerced statement is for courts to resolve each plaintiff's challenge through a Huntley hearing on a case-by-case basis.
 
 
 28
 Plaintiffs also argue that even if the statements are not actually used at trial, they are used as an incentive in plea bargaining and to enhance cases. Specifically, plaintiffs contend that the Miranda-violating statements "provide[ ] an incentive for appellants to seek plea bargains" and "provide[ ] important ammunition in the prosecutorial arsenal."
 
 
 29
 Again, the facial nature of plaintiffs' constitutional claim defeats this argument. In some situations, it is true that use of these statements in pre-trial settings may satisfy Weaver's parameters of use in a "criminal proceeding." But in their facial challenge to the constitutionality of the entire judicial proceeding, plaintiffs have not satisfied their "heavy burden" of demonstrating that "no set of circumstances exists under which the Act would be valid." Salerno, 481 U.S. at 745, 107 S.Ct. 2095. A showing that in some situations the Squad may coerce involuntary statements that are used against plaintiffs is insufficient to render the entire practice unconstitutional; they must establish that this necessarily happens in every case, and this they cannot do. Frequently, Squad interrogations are not followed by delinquency petitions at all. In other cases, the statements are not used against the declarant because they are exculpatory. Finally, we cannot conclude that there is no instance where a juvenile voluntarily waives his or her right against self-incrimination. See In re Giovanny G., No. D5783/96 (N.Y.Fam.Ct. Nov. 7, 1996) (Family Court denies suppression motion at Huntley hearing holding that "the presentment agency has met its burden of proving beyond a reasonable doubt that the respondent did knowingly and intelligently waive his Miranda rights and make a voluntary statement").
 
 
 30
 A class-based facial challenge also is not the appropriate remedy for plaintiffs' Fifth Amendment challenge because the voluntariness of a confession depends upon an examination of the totality of circumstances in each individual case, see Haynes, 373 U.S. at 513-14, 83 S.Ct. 1336, including whether Miranda warnings were properly administered or waived, whether counsel was present, whether the defendant knew the nature of the offense with which he was charged, and the time elapsing between arrest and the confession, see 18 U.S.C. § 3501(b). Other relevant factors to be considered include the characteristics of the accused; the conditions of the interrogation and; the conduct of the law enforcement officials. See Schneckloth, 412 U.S. at 226, 93 S.Ct. 2041. Courts are directed to consider "the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." Id. (citations omitted). Given the varying backgrounds of the juveniles questioned by the Squad, the Squad's practices may be constitutional with respect to some juveniles but unconstitutional with respect to others.
 
 
 31
 In sum, we believe that this facial challenge is not the appropriate vehicle to resolve plaintiffs' Fifth Amendment challenge and leave the resolution of plaintiffs' claims to case-by-case Huntley hearings.
 
 IV. Substantive Due Process Claim
 
 32
 Plaintiffs contend that the Squad's interrogations were so coercive and deceptive that they violated their due process rights under the Fifth and Fourteenth Amendments. Because plaintiffs are seeking relief from state practices only, we view their claims as arising under only the Fourteenth Amendment.
 
 
 33
 A Miranda violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, see Cooper, 963 F.2d at 1240-50, even when a confession is not used against the declarant in any fashion, see Weaver, 40 F.3d at 535. However, in this case we conclude that the Squad's actions do not rise to the level of police misconduct that is sufficient to constitute an actionable § 1983 claim.
 
 
 34
 The due process clause of the Fourteenth Amendment prohibits self-incrimination based on fear, torture, or any other type of coercion. See Brown v. Mississippi, 297 U.S. 278, 285-86, 56 S.Ct. 461, 80 L.Ed. 682 (1936). The question in each case is whether the conduct of "law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined." Rogers v. Richmond, 365 U.S. 534, 544, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). The challenged conduct must be the "kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." Moran v. Burbine, 475 U.S. 412, 433-34, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). While we agree that the Squad's interrogations are by their very nature deceptive, we do not find the circumstances of the interrogations to be so coercive as to amount to a constitutional violation.
 
 
 35
 The juveniles interrogated by the Squad are not detained for long periods of time or subject to prolonged periods of questioning. Cf. Culombe v. Connecticut, 367 U.S. 568, 635, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (holding that confession made after four nights and five days during which defendant was questioned repeatedly was not voluntary and denied defendant due process of law). They are not left alone with the police; at all times they are accompanied by a parent or guardian. Cf. Haynes, 373 U.S. at 514, 83 S.Ct. 1336 (due process violated when defendant was held in police custody incommunicado with no one to advise him for 16 hours). Miranda warnings are administered to both the juveniles and their parent or guardian. Cf. In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (in proceedings to determine delinquency, due process requires that child and his parents must be notified of right to counsel).
 
 
 36
 There is no evidence that a weakened physical condition impaired the juveniles' ability to make a knowing waiver of their rights against self-incrimination, see Mincey v. Arizona, 437 U.S. 385, 401, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (defendant's right to due process violated where he was "weakened by pain and shock, isolated from family ..., barely conscious and his will was simply overborne"); nor is there evidence that they were physically coerced or deprived or emotionally and psychologically overwhelmed. Cf. Cooper, 963 F.2d at 1231 (finding due process violation where police reduced suspect to "a state of agitation and anxiety marked by tears and sobbing as he persistently maintained his innocence in the face of [the detective's] onslaught"). Based on the facts seen in the light most favorable to the plaintiffs, we are unable to conclude that the defendants' practices exceed the bounds of due process.
 
 
 37
 Plaintiffs argue that because the Squad's statements were intended to trick them into confessing, it is impossible to conclude that they voluntarily waived their rights. While the Squad's conduct may have caused some confusion, we do not believe it was so egregious as to result in a due process violation. See United States v. Anderson, 929 F.2d 96, 99 (2d Cir.1991) ("Trickery does not make it impossible per se to find that a defendant voluntarily waived his rights."). Further, we do not find that the Squad's failure to explain every detail of the questioning amounts to affirmative deceit, see United States v. Serlin, 707 F.2d 953, 956-57 (7th Cir.1983) (failure to inform defendant about investigation or to disclose that he was subject of the investigation does not amount to affirmative deceit), particularly when the interviews are conducted in rooms that contain police signs, posters and notices.
 
 
 38
 In sum, we agree with the district court that the Squad's practice is not "so coercive as to amount to a per se constitutional violation." Deshawn E., 1997 WL 107544 at * 2. Although we can not rule out the possibility that in some cases an individual juvenile's will may be overcome by the agents' conduct, any such plaintiff who is injured can recover through a Huntley hearing or an individual § 1983 claim.
 
 V. Sixth Amendment
 
 39
 Plaintiffs also claim that the district court erred in granting defendants' motion for summary judgment on their Sixth Amendment claim. The Sixth Amendment right to counsel attaches at "the time that adversary judicial proceedings have been initiated." Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). We look to state law to determine when the adversarial process is commenced. See Meadows v. Kuhlmann, 812 F.2d 72, 76-77 (2d Cir.1987). Interpreting Kirby, New York has held that a criminal proceeding, and with it the right to counsel, is initiated by the filing of an accusatory instrument. See People v. Blake, 35 N.Y.2d 331, 339, 361 N.Y.S.2d 881, 320 N.E.2d 625 (1974).
 
 
 40
 In a juvenile delinquency proceeding, the right to counsel attaches when "the respondent first appears before the court." FCA § 320.3. Normally, a juvenile's first appearance before the court is upon a "pre-petition hearing" application, see FCA § 307.4, or the initial appearance upon a petition, see FCA § 320.1. Of course, juveniles have a right to counsel in a juvenile delinquency proceeding. See In re Cheri H., 121 Misc.2d 973, 469 N.Y.S.2d 551, 552 (N.Y.Fam.Ct.1983).
 
 
 41
 At the time of questioning by the Squad, the juveniles have not been arrested or charged with any crime. The adjustment process takes place before any juvenile delinquency petition is filed. Adversarial judicial proceedings have not commenced and the right to counsel has not attached. See Neighbour, 68 F.3d at 1511. As New York courts have determined, "the probation preliminary conference and the adjustment process are not critical stages of a juvenile delinquency proceeding," and thus a "juvenile is not entitled to counsel during the preliminary conference and the adjustment process." In re Bernard C., 168 Misc.2d 813, 640 N.Y.S.2d 962, 967 (N.Y.Fam.Ct.1996) (citing FCA § 249).
 
 
 42
 Acknowledging that formal adversarial proceedings have not commenced when the Squad questions them, plaintiffs ask us to hold that a right to counsel nevertheless exists because the Squad's activities "transform the adjustment process into a critical stage in the proceedings" and that adjustment constitutes "significant judicial activity." We decline plaintiffs' invitation.
 
 
 43
 In Meadows, 812 F.2d at 76, we held that there is an "equal need" for counsel "if substantial rights of an accused may be affected by a particular proceeding" and concluded that the Sixth Amendment right to counsel will be triggered at any "critical stage" of a criminal prosecution. New York courts have held that counsel was required when a defendant was brought to the scene of a crime by court order, see People v. Sugden, 35 N.Y.2d 453, 461, 363 N.Y.S.2d 923, 323 N.E.2d 169 (1974), placed in a post-indictment lineup, see People v. Coleman, 43 N.Y.2d 222, 225, 401 N.Y.S.2d 57, 371 N.E.2d 819 (1977), or compelled to appear before a grand jury, see People v. Cooper, 139 Misc.2d 44, 526 N.Y.S.2d 910, 914 (N.Y.Co.Ct.1988).
 
 
 44
 We decline to extend the Sixth Amendment right to counsel to the Squad's questioning on the ground that the questioning occurs at a critical stage in the criminal proceeding. The Squad's questioning is primarily investigatorial and benefits juveniles by adjusting those cases that are suitable for adjustment. Petitions are not filed against many of the juveniles who are questioned and many of the statements are exculpatory and are never used against the declarant. As we discussed earlier regarding their due process claim, plaintiffs' facial challenge also fails because the statements obtained by the Squad are not used against juveniles in every case. Therefore, any claim that a statement was unconstitutionally taken in the absence of counsel is properly remedied by suppression following a Huntley hearing.
 
 
 45
 Finally, we easily reject plaintiffs' claim to a Sixth Amendment right to counsel based on the existence of judicial activity. There is no significant judicial activity when the Squad questions the juveniles. Because the adjustment process is investigatorial--to determine whether to initiate juvenile delinquency proceedings, no court has jurisdiction over the plaintiffs.
 
 VI. Stay of Discovery
 
 46
 Plaintiffs also contend on appeal that the district court erred in precluding discovery and claim that a continuance for more discovery is likely to produce material facts that demonstrate that the Squad's practices produce involuntary statements. Specifically, plaintiffs seek depositions from the detectives who interrogated the named plaintiffs and a memorandum from the Corporation Counsel to the Squad concerning which children to interrogate.
 
 
 47
 The district court did not abuse its discretion in denying the motion for a stay of summary judgment pending further discovery because, as a matter of law, the plaintiffs have failed to make out a viable cause of action under the Fifth, Sixth or Fourteenth Amendment. More discovery would not assist plaintiffs in establishing a Fifth Amendment violation because this is a facial challenge and there is no evidence that coerced statements are used against the defendants in every case. See Salerno, 481 U.S. at 745, 107 S.Ct. 2095.
 
 
 48
 In addition, the present record sufficiently demonstrates that the Squad's interrogations are not so coercive as to produce involuntary waivers of the Fifth Amendment right against self-incrimination or to violate the due process clause. Further discovery would not materially alter this determination, particularly because the discovery plaintiffs seek, the depositions of the Squad investigators and the Corporation Counsel's memorandum, relate primarily to the state of mind of the investigators, not whether in every case plaintiffs' statements were involuntary. While a more detailed accounting of the facts as to each juvenile's interrogation may be relevant to individual challenges at a Huntley hearing, the district court did not abuse its discretion in concluding that it would serve little purpose in supporting plaintiffs' facial constitutional claims under the Fifth or Fourteenth Amendments. Finally, further discovery would not advance plaintiffs' Sixth Amendment claim because, as we held, the interrogations do not occur at a critical stage entitling plaintiffs to counsel.
 
 
 49
 In sum, we conclude that plaintiffs have no cause of action under the Fifth, Fourteenth, or Sixth Amendment and that the district court did not abuse its discretion in denying further discovery pending the disposition of the summary judgment motion. It follows that the district court's denial of plaintiffs' motion for a preliminary injunction is affirmed.
 
 CONCLUSION
 
 50
 For the foregoing reasons, we affirm the judgment of the district court.