Sherri J. **GRADISHER** and Scott M. Brown, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**COUNTY OF MUSKEGON, County of Muskegon Office of the Sheriff, Robert L. Carter, Check Enforcement Unit, Inc., Allen B. Johnson, Terry Heiss, and Diane Cole, Defendants.**

No. 1:02–CV–370.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 24, 2003.

## OPINION

QUIST, District Judge.

 Plaintiffs, Sherri J. Gradisher ("Gradisher") and Scott M. Brown ("Brown"), have sued Defendants, County of Muskegon (the "County"), County of Muskegon Office of the Sheriff ("Sheriff's Department"), Sheriff Robert L. Carter ("Carter" and together with the County and the Sheriff's Department referred to as the "County Defendants"), Check Enforcement Unit, Inc. ("CEU"), Allen B. Johnson[1] ("Johnson"), Terry Heiss ("Heiss"), and Diane Cayo[2] ("Cayo" and together with CEU, Johnson, and Heiss referred to as the "CEU Defendants"), alleging violations of their federal civil rights pursuant to 42 U.S.C. § 1983 as well as violations of their rights under the Michigan Constitution. Now before the Court are the County Defendants' motion for summary judgment[3] and the CEU Defendants' motion to dismiss.

## I. Facts

CEU is a Michigan corporation located in Ada, Michigan. Johnson, Heiss, and Cayo are current and/or former officers and owners of CEU. CEU's sole business activity is the collection through its Check Operational Procedure of dishonored checks received by area merchants. CEU provides its services through contractual arrangements with various municipalities throughout the state of Michigan. Al-

O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, IL, Louis R. Lint, Muskegon, MI, Phillip C. Rogers, Grand Rapids, MI, for plaintiffs.

Stephen C. Corwin, Williams, Hughes, Corwin & Sininger, PC, Muskegon, MI, Daniel P. Webber, Thomas, DeGrood, Witenoff and Hoffman, Southfield, MI, for defendants.

---

1. Johnson was previously dismissed from this case without prejudice by Order dated October 1, 2002.

2. It appears that Plaintiffs misidentified Defendant Diane Cayo as Diane Cole in the complaint. Accordingly, the Court will refer to this defendant as Diane Cayo in this Opinion.

3. Although the County Defendants have styled their motion as a motion for summary judg-

ment, the County Defendants cite the standard for a motion to dismiss in their brief. In addition, although the County Defendants have attached documents in support of their motion, those documents were attached to and incorporated by Plaintiffs in their complaint, and therefore are not considered matters beyond the pleadings. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Accordingly, the Court will treat the motion as a motion to dismiss.

though CEU provides its services to merchants, it does so in collaboration with the municipalities' law enforcement agencies. Merchants enroll in CEU's Check Operational Procedure by paying CEU an $85 registration fee. When a check received by a participating merchant is dishonored, the check is forwarded to CEU by the merchant's bank or financial institution. After CEU receives the dishonored check, it sends out a series of notices and letters to the check writer printed on the letterhead of the municipality's law enforcement agency. These notices and letters demand payment of the check amount, bank fees, and a fee payable to the municipality.

On November 28, 1996, the County adopted a check violation ordinance (the "Ordinance") designed to address the problems created by dishonored checks. The Ordinance, which took effect on December 19, 1996, was based, in part, upon Michigan statutes making it unlawful to intentionally write checks drawn on accounts with insufficient funds and creating a presumption of intent to defraud where the check writer refuses to pay after receiving a notice of dishonored check. In addition, the Ordinance provided for a $25 Government Assessment Fee in addition to the amount of the dishonored check. On or about December 13, 1996, CEU entered into a contract with the County to provide services to the County for the processing and recovery of dishonored checks and investigation of dishonored check violations under the Ordinance. The contract provided that CEU is an independent contractor and

> shall process, recover, investigate, and assist in the enforcement of dishonored checks in violation of applicable state laws or township ordinances as submitted by merchants, businesses, and citizens for violations occurring with these areas of the County not served by municipal police departments, pursuant to the terms and conditions stated with this

Contract and for the terms as specified herein.

(Contract ¶ 1, Compl. Ex. B.)

Pursuant to the contract, when a check payable to a participating merchant is dishonored, the check is forwarded directly to CEU. CEU then sends out a series of notices or letters at fifteen day intervals to the check writer using the Sheriff's Department letterhead and envelopes supplied by the Sheriff's Department. The first notice, entitled "Due Process Notice", demands two separate payments by cashiers check or money order, one for the amount of the dishonored check plus bank fees payable to the merchant, and the other for the $25 Government Assessment Fee payable to the County. The Due Process Notice states:

> **Notice:** This letter notifies you that the following check(s) have been returned from your financial institution as insufficient funds or account closed, which is a violation of law. Stop Payment and other forms of returned checks may be a violation of law—call the Law Enforcement Processing Center for further clarification.
>
> Violations of check laws are administered for our department at the Law Enforcement Processing Center. Repayment of the check(s) plus the bank fee and government assessment fee is required. Should you have any questions regarding this letter or the amount due, please feel free to call our processing Center at 616–949–7992, Monday–Friday 12:00 P.M. to 5:00 P.M.

(Due Process Notice, Compl. Ex. 3.) The following statements appear on the reverse side of the Due Process Notice:

> ### *WARNING*
>
> A local check law is in effect for the passing of bad checks. The law states

that you are required to pay the full amount of the check plus fees . . .

**WITHIN FIVE (5) BUSINESS DAYS AFTER RECEIVING THIS NOTICE.** Please contact the Law Enforcement Processing Center if your checks have been stolen, or if your funds were removed due to garnishment, attachment, levy, or other lawful court order.

. . . . .

**FAILURE TO MAKE PAYMENT CAN RESULT IN A WARRANT FOR YOUR ARREST**

(*Id.*) The Due Process Notice is used to establish the presumption of the check writer's intent to defraud under the Ordinance through the check writer's failure to pay the amounts due within five days.

The second notice, entitled "Final Notice", is sent out if the check writer fails to respond to the Due Process Notice. The Final Notice repeats the demand for payment of the amounts set forth in the Due Process Notice and advises the check writer that he or she has violated criminal law. The Final Notice states:

WARNING: You have failed to respond to the notice sent to you by the Law Enforcement Processing Center. *You are now in violation of criminal law.* Immediate payment is necessary in order to comply with the requirements of the law. If payment has been made, please disregard this notice.

Violations of check laws are administered for our department at the Law Enforcement Processing Center. Repayment of the check(s) plus the bank fee *and government assessment fee is* required. Should you have any questions regarding this letter or the amount due, please feel free to call our Processing Center at 616–949–7992, Monday–Friday 12:00 P.M. to 5:00 P.M.

(Final Notice, Compl. Ex. D.) The reverse side of the Final Notice contains the same warning regarding the possibility of arrest that appears on the reverse side of the Due Process Notice.

The third notice, entitled "Interview Notice", is sent out if there is no response to the Final Notice. The Interview Notice states:

We have been informed by the Law Enforcement Processing Center that you have failed to pay the full value of the check(s) written to a merchant in our jurisdiction and/or the government assessment fee. You are now in violation of criminal law and/or local ordinances. We have requested that the Law Enforcement Processing Center begin an investigation for the consideration of criminal prosecution.

(Interview Notice, Compl. Ex. F.) The Interview Notice also instructs the check writer to report to the Sheriff's Department for an interview on the check complaint. In addition, the Interview Notice contains the telephone number for the Law Enforcement Processing Center and repeats the warning to the check writer that an arrest warrant can be issued. The Due Process Notice, Final Notice, and Interview Notice are all sent on Sheriff's Department letterhead.

On June 16, 1999, CEU sent a Due Process Notice to Plaintiff Gradisher regarding check # 5441, which she wrote to Doug Born's Smokehouse in the amount of $81.30. The Due Process Notice stated that the check was returned for insufficient funds, resulting in a violation of law. The Due Process notice demanded payment by cashiers check or money order of $81.30 plus a bank fee of $4.00 to Doug Born's Smokehouse and payment of the $25 Government Assessment Fee by money order payable to the County. On June 30, 1999, CEU sent Gradisher a Final Notice regarding check # 5441, which repeated the demand for the two payments set forth in the Due Process Notice and

informed her that she was in violation of criminal law. On July 14, 1999, CEU mailed Gradisher an Interview Notice requesting her to report to the Sheriff's Department on August 4, 1999. Gradisher did not pay the amounts demanded within the five days as set forth in the Due Process Notice, Final Notice, and Interview Notice, but later did ultimately pay the amount sought, including the $25 Government Assessment Fee.

On December 26, 2001, Plaintiff Brown received a Due Process Notice from CEU regarding check # 1043, which Brown wrote to Corner Store, Inc. for $58.80. The notice stated that the check was returned for insufficient funds and demanded payment by money order or cashiers check in the amount of $54.80 plus $4.00 for a bank fee payable to Corner Store, Inc. and payment of a $25 Government Assessment fee by money order or cashiers check payable to the County. On January 9, 2002, CEU sent Brown a Final Notice regarding check # 1043, which repeated the demand for the two payments set forth in the Due Process Notice and informed Brown that he was in violation of criminal law. On January 23, 2002, CEU sent Brown an Interview Notice requesting him to report to the Sheriff's Department on February 6, 2002. Brown did not pay the amounts demanded within the five days as set forth in the Due Process Notice, Final Notice, and Interview Notice, but later did pay the $25 Government Assessment Fee.

Gradisher and Brown filed this action against Defendants, alleging that Defendants violated their due process rights under the Fourteenth Amendment to the United States Constitution and the Due Process Clause of the Michigan Constitution by: (1) imposing a $25 Government Assessment Fee on persons who have allegedly written a dishonored check, without a criminal complaint having been filed with the Sheriff's Department, without a determination of the check writer's intent to defraud, and without a determination to prosecute having been made; (2) imposing a $25 Government Assessment Fee without providing notice and an opportunity to be heard by an impartial government official; and (3) by allowing the CEU Defendants to impersonate the Sheriff's Department.

Prior to bringing the instant suit, Gradisher filed a separate suit against CEU under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692–1692o. This Court determined that CEU was a debt collector under the FDCPA and that CEU committed several violations of the FDCPA and awarded Gradisher statutory damages. *See Gradisher v. Check Enforcement Unit, Inc.,* 210 F.Supp.2d 907 (W.D.Mich.2002).

## II. *Motion Standard*

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.34[1][b] (3d ed.1997). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Dismissal is proper "only if it is clear that no relief could be granted un-

der any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### III. *Discussion*

### A. County Defendants' Motion

The County Defendants argue in their motion that the Court should dismiss Plaintiffs' complaint because Plaintiffs have failed to allege a violation of their due process rights. In addition, the County Defendants argue that Sheriff Carter is entitled to qualified immunity. Finally, the County Defendants argue that Plaintiffs were not entitled to *Miranda* warnings in the notices sent by CEU.

### 1. Due Process Violation[4]

To establish a procedural due process violation in a claim under 42 U.S.C. § 1983, Plaintiffs must show: " '(1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment ..., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.' " *Med. Corp. v. City of Lima,* 296 F.3d 404, 409 (6th Cir.2002) (quoting *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir. 1999)). The County Defendants concede

that Plaintiffs had a property interest in their money, but argue that Plaintiffs' claim must fail because there was no "deprivation" of Plaintiffs' property and the Due Process Notice, Final Notice, and Interview Notice afforded Plaintiffs adequate procedural rights.

In support of their motion, the County Defendants rely heavily upon the Sixth Circuit's decision in *Herrada v. City of Detroit,* 275 F.3d 553 (6th Cir.2001). In *Herrada,* the plaintiff alleged that the City of Detroit's citations and notices for parking violations violated her right to procedural due process by including false and misleading statements regarding potential penalties. The Detroit City Code authorized police officers to place a citation on any automobile found in violation of the city's parking laws. *Id.* at 554–55. A citation, which was treated as an allegation of a civil infraction rather than a conclusive finding of guilt under the Detroit City Code, was required to notify the owner of the automobile of the deadline to respond before additional penalties would apply, the method of responding, the hours and location of the bureau or court that would handle objections, and the amount of the proposed fine. *Id.* at 555. The citations informed the owner of the address to which payment should be sent; the owner's right, within thirty days, to admit responsibility and pay the fine, admit responsibility and provide an explanation of why he or she should not be required to

---

4. Plaintiffs assert that the County Defendants have violated the Court's Rule 16 Order, which required Defendants to file motions to dismiss on the basis of absolute or qualified immunity, because the County Defendants have filed a motion for summary judgment raising issues other than qualified or absolute immunity. The Court disagrees, because, as noted above, it appears that the County Defendants simply mislabeled their motion to dismiss as a motion for summary judgment. In addition, in addressing the qualified immu-

nity question, the County Defendants were required to address the issue of whether Plaintiffs have stated a claim for violation of their constitutional rights because the first step in a qualified immunity analysis is to determine whether the plaintiff has alleged the deprivation of a constitutional right. *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999). If not, then there is no need to proceed to the inquiry regarding whether the right was clearly established.

pay the fine, or deny responsibility and request a hearing; the potential consequences of inaction; and the telephone number of the parking violations bureau where the owner could obtain additional information. *Id.* If an owner failed to respond to the citation, the city sent an overdue notice to the owner, which provided payment instructions and an address for payment and informed the owner of the consequences of failing to respond, which included the filing of a civil action, withholding of the owner's driver's license, and impounding of the owner's automobile. *Id.*

In conducting its due process analysis, the court first determined that the plaintiff had a property right in her money. *Id.* at 556. With regard to the issue of whether the city interfered with or deprived the plaintiff of her property interest, the court acknowledged the city's argument, supported by authority from the Tenth Circuit addressing procedural due process claims in the employment context, that there was no governmental interference because the plaintiff voluntarily paid her parking ticket. *Id.* The court declined to decide the issue on that basis, however, because the plaintiff alleged that the citation and notice she received contained false and misleading information, which induced her to pay the fine. *Id.* at 557. Citing *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the court concluded that the citation and notice complied with due process, even if they contained false and misleading statements, because they informed the recipient that a hearing was available to contest the city's allegation that the vehicle owner had committed a parking violation. *Id.* at 557. The court also observed that the citation and the notice also provided telephone numbers that recipients could call for additional information. *Id.* In spite of its conclusion that there was no due process violation, the court returned to the plaintiff's assertion that the citation and notice contained false and misleading information and found that none of the statements was false or misleading. *Id.* The court found that the warnings in the citation and notice that failure to respond could result in an additional penalty, withholding of the owner's license, or booting of the owner's vehicle were only possible consequences within the city's authority to impose. *Id.* at 557–58. In addition, although the plaintiff alleged that the statement that a citation would be filed in court was false because the city had not filed any citations in court since 1996, the court noted that the city still retained the authority to file citations in court and could still file citations for infractions that occurred in 1996 based upon the six-year statute of limitations for the filing of civil infractions. *Id.* at 558.

Relying on *Herrada,* the County Defendants argue that Plaintiffs' procedural due process claim must fail because Plaintiffs voluntarily paid the amounts set forth in the Due Process Notice and Final Notice, including the Government Assessment Fee, and the notices did not contain any false or misleading statements. In addition, the County Defendants argue that even if there was a deprivation, Plaintiffs' claim must fail because the Due Process Notice informed Plaintiffs of the bad check violation, instructed Plaintiffs to pay the amount owed to the merchant plus bank fees and the Government Assessment Fee, and provided Plaintiffs with a telephone number they could call if they had any questions. The County Defendants also note that this information was reiterated in the Final Notice and the Interview Notice. Furthermore, the County Defendants assert that the Due Process Notice and Final Notice merely gave Plaintiffs a choice between voluntarily paying the amount due, including the Government Assessment Fee, or not paying the amount due and

facing civil or criminal proceedings, in which case Plaintiffs would have been accorded due process through a civil or criminal trial.

Plaintiffs contend that the County Defendants' motion must be denied for two reasons. First, Plaintiffs argue that, contrary to the County Defendants' assertions, the notices contain many false and misleading statements. For example, Plaintiffs point out that the notices are on Sheriff's Department letterhead, but the County Defendants are unaware of and uninvolved in the preparation and sending of the notices. Plaintiffs also note that no bad check complaints had been filed with the Sheriff's Department and no file had been opened by the Sheriff's Department. In addition, Plaintiffs claim that the statements "Failure to make payment can result in a warrant for your arrest" and "You are now in violation of criminal law" are false, because the CEU Defendants cannot issue arrest warrants and lack the authority to make a determination that Plaintiffs are in violation of criminal law and the County Defendants did not make such a determination. Second, Plaintiffs contend that the motion must be denied because the notices did not state that a hearing was available and did not inform Plaintiffs of the procedure for obtaining a hearing, as was the case in *Herrada.*

■ Having considered the parties' arguments, the Court concludes that Plaintiffs have failed to allege a due process claim because there was no deprivation and the notices afforded Plaintiffs adequate procedural rights. With regard to whether a deprivation occurred, as discussed above, in *Herrada,* the Sixth Circuit recognized that an individual's voluntary surrender of property to the government precludes a due process claim because, in such cases, there has been no governmental interference with the individual's property interest. *Her-*

*rada,* 275 F.3d at 556–57; *see also Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 393 (4th Cir.1990) ("If one voluntarily surrenders a liberty interest to the State, there has been no 'deprivation' of that interest by the State, and no due process violation."). Here, both Plaintiffs admit in their complaint that they voluntarily paid the $25 Government Assessment Fee. Thus, no deprivation occurred.

■ Plaintiffs' attempt to avoid the consequences of a voluntary payment by arguing that the notices contained false or misleading information must be rejected because none of the statements in the notices is false or misleading. First, Plaintiffs' assertion that the notice was false because it was printed on Sheriff's Department letterhead, but the County Defendants were unaware of the dishonored check, uninvolved in the preparation and sending of the notices, and had neither received a bad check complaint nor opened a bad check file, must be rejected because none of the statements in any of the notices conveys the impression that any of those facts were true. The Due Process Notice informs the recipient that a check he or she has written has been returned as unpaid for insufficient funds or because the account was closed. There is nothing false about this statement. In addition, both the Due Process Notice and the Final Notice inform the recipient that check law violations "are administered for [the Sheriff's Department] at the Law Enforcement Processing Center," which apparently was the designation for CEU. While it may be true that the Sheriff's Department was not actually aware of each Due Process Notice that was sent out, the Sheriff's Department was aware generally that CEU was administering bad check violations on behalf of the Sheriff's Department, because the Sheriff's Department had granted CEU that authority pursuant to their con-

tract. In fact, all of the notices advise the recipient to contact the Law Enforcement Processing Center rather than the Sheriff's Department.

◼ Second, Plaintiffs assertion that the statement, "FAILURE TO MAKE PAYMENT CAN RESULT IN A WARRANT FOR YOUR ARREST," in each of the notices is similar to the statements in *Herrada* regarding the potential consequences of an owner's failure to respond to the citation and overdue notice. The court concluded that the statements were not false because the City of Detroit had the authority to impose those penalties or take such action. *Herrada*, 275 F.3d at 557. Plaintiffs assert that the notices were false because the CEU defendants did not have the authority to issue arrest warrants and no warrant was ever issued for either Plaintiff. However, the statement was true, because criminal prosecution was a real possibility under both the Ordinance and state law.[5]

◼ Finally, Plaintiffs' assertion that the statement, "You are now in violation of criminal law," in the Final Notice was false because the CEU defendants did not have the authority to make such a determination and the County Defendants never made such a determination must be rejected, because Plaintiffs' failure to pay the amount due within five days after receipt of the Due Process Notice gave rise to a rebuttable presumption under both the Ordinance and state law that Plaintiffs wrote the bad checks with intent to defraud.[6] Therefore, Plaintiffs' failure to pay the amount owed within five days of the Due Process Notice was prima facie evidence that Plaintiffs violated the law, even in the

---

5. Section 6 of the Ordinance provides:

> The penalty for a person convicted of the violation of Section 3 shall be a fine of not more than Five Hundred Dollars ($500) and costs of prosecution and cost recovery or by imprisonment of not more than ninety (90) days, or both such fine and imprisonment in the discretion of the court.

(Ordinance § 6.)

> Similarly, M.C.L. § 750.131 provides:
> A person shall not make, draw, utter, or deliver any check, draft, or order for the payment of money, to apply on account or otherwise, upon any bank or other depository with intent to defraud and knowing at the time of the making, drawing, uttering, or delivering that the maker or drawer does not have sufficient funds in or credit with the bank or other depository to pay the check, draft, or order in full upon its presentation.

M.C.L. § 750.131(1). The statute also prescribes penalties for violation, including imprisonment for not more than ninety-three days for a first offense if the amount is less than $100, up to two years if the amount of the check is $500 or more or if the amount is more than $100 but less than $500 and the offender has two or more bad check convictions. M.C.L. § 750.131(2).

6. Section 4.B.(2) of the Ordinance provides:

> For the purpose of this ordinance a person is presumed to have acted with intent to defraud if said person shall not have paid the drawer thereof the amount due therein, together with all costs and protest fees, including the fees assessed hereunder, within five (5) business days after receiving notice by first class mail to the last known address of record that such check, draft, or order has not been paid by the drawee.

(Ordinance § 4.B.(2).) The state law provides a similar presumption:

> As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, when presented in the usual course of business, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in or credit with such bank or other depository, provided such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with all costs and protest fees, within 5 days after receiving notice that such check, draft or order has not been paid by the drawee.

M.C.L. § 750.132.

absence of an actual determination by the Sheriff's Department.[7]

■ Even if the Court were to conclude that the notices contained false or misleading statements, the Court would still conclude that Plaintiffs have failed to allege a due process violation because the notices were reasonably calculated to inform Plaintiffs of the allegations against them and provided a means for responding to the allegations. In *Herrada*, the court noted that the citation and overdue notice satisfied due process requirements because the citation informed the owner that a hearing was available to contest the parking violation allegation. *Herrada*, 275 F.3d at 557. The court also noted that the citation and overdue notice "provide[d] telephone numbers to call for more information." *Id.; see also Horn v. City of Chicago*, 860 F.2d 700, 705 (7th Cir.1988) ("All of the notices listed 'outstanding parking tickets' and a telephone and address where recipients could receive further information."). In this case, the Due Process Notice, Final Notice, and Interview notice all provided a telephone number for the Law Enforcement Processing Center that Plaintiffs could call with questions or for further clarification. In addition, all three notices advised Plaintiffs to call the Law Enforcement Processing center if their checks were stolen or if funds were removed from Plaintiffs' accounts due to garnishment or other legal procedure.

■ Plaintiffs correctly note that the notices did not advise them of the availability of a hearing and the procedure for requesting a hearing, as was the case in

*Herrada.* However, the lack of such information or even a formal hearing does not render the notices constitutionally deficient. " 'Due process' is a flexible concept that varies according to the situation." *Sharp v. Lindsey*, 285 F.3d 479, 488 (6th Cir.2002) (citing *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990)). "The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The Supreme Court has held that the determination of whether a given procedure comports with due process depends upon three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

First, the private interest affected in this case, a $25 fee, is relatively minimal. In other words, Plaintiffs were not being threatened with the loss of an essential service, such as electricity, *see Memphis Light, Gas & Water Div.*, 436 U.S. at 14 n.

---

**7.** As support for their argument that the notices contained false and misleading statements, Plaintiffs quote statements from this Court's decision in *Gradisher v. Check Enforcement Unit, Inc.*, 210 F.Supp.2d 907, 917 (W.D.Mich.2002). The Court finds Plaintiffs' citation unpersuasive, because the issue in

that case was whether CEU, as a debt collector, violated the Fair Debt Collection Practices Act. In other words, as specifically noted in that decision, the Court was not faced with the issue of whether the notices violated Gradisher's due process rights.

15, 98 S.Ct. at 1563 n. 15, or with the loss of employment, *see Loudermill,* 470 U.S. at 542–43, 105 S.Ct. at 1493–94, both of which would require greater protection.

Second, there is no indication that additional procedural safeguards would reduce the risk of an erroneous deprivation of Plaintiffs money. As indicated in the Due Process Notice, the proof of the bad check violation is the returned check itself. Plaintiffs had notice of the returned check and were provided with a telephone number to call if their checks were stolen, if their accounts had been garnished, or if they had any other reason why they should not be required to pay the Government Assessment Fee. Plaintiffs did not attempt to call the telephone number, and they have not suggested that additional safeguards would reduce the likelihood of an erroneous deprivation. Moreover, as the County Defendants note, if Plaintiffs had failed to pay the Government Assessment Fee, the County Defendants could not have deprived Plaintiffs of their property without first filing a civil or criminal action, because the Ordinance does not authorize the County to take any action against individuals that fail to respond other than through a civil or criminal proceeding.

██ The final factor the Court must consider under *Mathews* is the burden on the County of providing additional or substitute procedures. The County's interest in this case is in resolving bad check complaints outside of the criminal system, thereby reducing administrative costs associated with such violations and avoiding unnecessary criminal or civil proceedings. By "outsourcing" the handling of bad check violations, the County is able to accomplish these goals. Requiring the County to provide additional safeguards, such as a full hearing, for example, would increase the County's costs and administrative burdens but would not result in any significant benefit to Plaintiffs. Moreover, in all likelihood, the Government Assessment Fee would be increased to pay for the costs of the additional procedures. Accordingly, Plaintiffs have not alleged a due process violation. Therefore, the Court need not address the issue of whether Sheriff Carter is entitled to qualified immunity.[8] *Mays v. City of Dayton,* 134 F.3d 809, 813 (6th Cir.1998).

## 2. Requirement of Miranda Warnings

██ The remaining issue raised by the County Defendants' motion is whether *Miranda* warnings were required when the notices were sent to Plaintiffs. Regardless of whether such warnings were required, which the Court doubts to be the case, Plaintiffs have no claim under § 1983 based solely upon a law enforcement officer's failure to give *Miranda* warnings. The proper remedy for such a violation is the exclusion of evidence in a criminal proceeding. *Deshawn E. v. Safir,* 156 F.3d 340, 346 (2d Cir.1998) (noting that "plaintiffs cannot base a § 1983 claim solely on a law enforcement officer's failure to administer *Miranda* warnings"); *Jones v. Cannon,* 174 F.3d 1271, 1291 (11th Cir. 1999) ("No rational argument can be made in support of the notion that the failure to give *Miranda* warnings subjects a police officer to liability under the Civil Rights Act."). Accordingly, Plaintiffs have no claim based upon Defendants' failure to give *Miranda* warnings.

---

8. The Court's holding also disposes of Plaintiffs' due process claim under the Michigan constitution because such claims are subject to the same analysis as due process claims under the federal constitution. *See In re CR,* 250 Mich.App. 185, 204, 646 N.W.2d 506, 516 (2002) (per curiam).

**B. CEU Defendants' Motion**

The CEU Defendants seek dismissal of Plaintiffs' complaint upon the ground that they are not state actors subject to liability under § 1983. Having concluded that Plaintiffs have failed to state a claim for violation of a constitutional right, the Court finds it unnecessary to separately address the CEU Defendants' argument.

**IV.  *Conclusion***

For the foregoing reasons, the court will grant the County Defendants' motion to dismiss. The Court will deny the CEU Defendants' motion to dismiss as moot.

An Order consistent with this Opinion will be entered.